**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**KEVIN PLANTAN**

      *Plaintiff*

**v.**                            **Case No. 3:22-cv-00407**

**KELLY SMITH;**
**HANOVER COUNTY SHERIFF'S**
**DEPARTMENT, and SGT. TROY PAYNE,**
**in his official and individual capacity;**
**HANOVER COUNTY DEPARTMENT OF SOCIAL SERVICES,**
**AHNAIA WHITE, DEVON PARHAM, in their official**
**and individual capacities;**
**CORNERSTONE THERAPY ASSOCIATES, LLC;**
**WENDY ATKINSON;**
**OLIVIA MASTRANGOLIA; and**
**DANIELLE WHITLOW**

      *Defendants*

## COMPLAINT

COMES NOW the Plaintiff, Mr. KEVIN PLANTAN, by and through counsel, and files this action. In support of his claims, Mr. Plantan states the following, seeking redress from all Defendants jointly and severally liable:

## PARTIES

1. Mr. Kevin Plantan is a resident of Connecticut.

2. Ms. Kelly Smith is a resident of Hanover County, Virginia.

3. The Hanover County Sheriff's Department (hereinafter "Defendant Sheriff's Department") is the official law enforcement agency for the independent municipality of Hanover County, Virginia.

4. Sgt. Troy Payne is a resident of Virginia and an agent of the Hanover County Sheriff's Department and served in that capacity at all times relevant to this matter.

5.  The Hanover County Department of Social Services (hereinafter "Defendant Social Services") is the official department of Hanover County, Virginia responsible for child protective services, among other duties.

6.  Ms. Ahnaia White is a resident of Virginia and an agent of the Hanover County Department of Social Services.

7.  Ms. Devon Parham is a resident of Virginia and an agent of the Hanover County Department of Social Services.

8.  Cornerstone Therapy Associates, LLC (hereinafter "Cornerstone") is a Virginia-based limited liability company doing business in the Commonwealth of Virginia, including Hanover County, Virginia.

9.  Defendant Wendy Atkinson is a resident of Virginia and an agent of Cornerstone.

10. Defendant Olivia Mastrangolia is a resident of Virginia and an agent of Cornerstone.

11. Defendant Danielle Whitlow is a resident of Virginia and an agent of Cornerstone.

## JURISDICTION AND VENUE

12. This court has subject matter jurisdiction to consider issues involving federal questions arising under the Constitution of the United States pursuant to 28 U.S.C. § 1331.

13. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

14. Venue for this action properly lies in this Court pursuant to 28 U.S.C. § 1391(b) as a substantial part of the vents giving rise to this action occurred within this District.

15. The Court has authority to award costs and attorney's fees pursuant to 42 U.S.C. § 1988.

## FACTUAL BACKGROUND

16. Plaintiff Kevin Plantan and Defendant Kelly Smith were married in 2001 and divorced in 2010.

17. During their marriage the couple had their only child, S.P., who is still a minor at fifteen years old.

18. At two years old, S.P. began showing signs of cognitive decline or regressive tendencies in her learning and development.

19. At the age of three, S.P. was diagnosed with regressive autism.

20. S.P. was later diagnosed with severe dyspraxia, a motor-function disorder that severely limits, alters, and impacts her ability to control her own physical movements.

21. At approximately two and a half years old, S.P. became nonverbal and has had severe limitations in her ability to communicate.

22. Since Defendant Smith's divorce from Mr. Plantan, she married Mr. Matt Long and the two reside in Hanover County, Virginia with S.P. and Mr. Long's two older children.

23. Mr. Plantan lived in Virginia after his divorce with Defendant Smith but ultimately relocated to Florida in 2019 while maintaining scheduled visits with S.P.

24. Relevant to issues in this suit, S.P. was introduced to a "letter board" as a means of trying to conduct a practice known as "facilitated communication" in 2014.

25. Such a technique involves the purported speaker, S.P., pointing to individual letters on a board via assistance of another individual, or a "facilitator," as a means of spelling individual words.

26. "Facilitated communication" involves a partner, or "facilitator" assisting the speaker's pointing to letters (e.g., typing, pointing at pictures or letters, touching a page, screen, or picture, etc.) and such facilitator offers support via physical and verbal prompts, the physical touching and placing of the speaker's fingers on the relevant letters, and provision of other physical cues.

27. In 2016, Hanover County Public Schools informed Defendant Smith that S.P.'s use of the letter board for facilitated communication would not be recognized as a legitimate practice for its purposes and she did not engage in the practice again until 2019.

28. In 2019, S.P. was directed by Defendant Smith to engage in another form of facilitated communication.

29. Facilitated communication is a disproven, controversial, nonscientific, unaccepted, and unrecognized practice insofar as it does not involve reliable or credible communication with those suffering from nonverbal autism.

30. Facilitated communication has not been recognized in the Commonwealth as a legitimate practice for the purposes of establishing probable cause in a criminal matter.

31. The methods of facilitated communication used by Cornerstone have not been approved by a the Code or adopted by any appellate court or any court of record in Virginia.

32. Not only have other courts throughout the United States rejected the practice insofar as witness testimony is concerned, the American Speech and Hearing Association has taken a position completely rejecting Facilitated Communication, as did Hanover County Public Schools in S.P.'s specific case.

33. Every Defendant in this suit knew, should have known, or had reason to know that facilitated communication is considered unreliable or otherwise lacks judicial acceptance as a legitimate means of communicating with a nonverbal autistic speaker with severe dyspraxia.

34. In 2019, Defendant Smith hired Defendant Cornerstone and specifically Defendant Wendy Atkinson, an Occupational Therapist and agent of Cornerstone, to begin using a form of facilitated communication with S.P. to assist her with virtual learning among other things.

35. Defendant Smith hired Defendant Atkinson and two other Cornerstone employees, Defendant Olivia Mastrangolia and Defendant Danielle Whitlow, to engage in a form of facilitated communication throughout S.P.'s seventh grade school year during the virtual learning experience required in the COVID-19 pandemic.

36. In 2019, the method of facilitated communication involved the introduction of a keyboard or keypad on an iPad tablet device rather than using the physical letter board that was previously rejected by Hanover Public Schools.

37. After reviewing the iPad communication and assertions from Defendant Atkinson concerning her work with S.P. and facilitated communication, Hanover County Public Schools continued to reject its use for the purposes of S.P.'s graded assignments or assessments.

38. According to Defendants Atkinson, Whitlow, and Mastrangolia, along with Defendant Troy Payne of the Hanover County Sherriff's Office, Defendant Ahnaia White from Hanover County Social Services, and S.P.'s guardian ad litem, Virginia Podboy, S.P. would eventually use this facilitated communication and purportedly made allegations that Mr. Plantan sexually abused her in 2013 and in 2016, when she was six and nine years old respectively.

39. Defendants Atkinson, Mastrangolia, and Whitlow each acted as a facilitated communicator for S.P. on independent occasions when each purportedly facilitated S.P. as she used an iPad or other device as a means of making the allegations against Mr. Plantan.

40. Defendants Atkinsons, Mastrangolia, and Whitlow each acted as a facilitator and reported these purported allegations.

41. Based solely on these allegations that purportedly came from S.P.'s use of facilitated communication, and without any other physical or testimonial evidence or any other witness or display of corroboration, Defendant Payne of the Hanover Sheriff's Department obtained

felony criminal charges and arrest warrants for Mr. Plantan on January 8, 2021, charging Mr. Plantan with two counts of rape and two counts of sodomy of S.P. as a child thirteen years old or younger.

42. On the evening of January 8, 2021, Defendant Smith contacted Defendant Payne and informed him that Mr. Plantan was to visit S.P. the following day at Courthouse Park in Hanover County at 10:00 a.m.

43. Defendant Smith also forwarded pictures of a rental van that Mr. Plantan was believed to be driving to the scheduled visit.

44. On January 9, 2021 at approximately 10:00 a.m., Mr. Plantan exited the rented Chrysler Pacifica minivan at the Courthouse Park and deputies from the Defendant Hanover County Sheriff's Department, acting pursuant to Defendant Payne's directive, approached Mr. Plantan on foot and asked for Mr. Plantan's identification while with other members of the Sheriff's Department.

45. At 10:02 a.m., units for the Hanover County Sherriff's Department arrested Mr. Plantan, searched him incident to arrest, searched his van, towed the vehicle, and transported him to the Sherriff's Department where he was placed in the interview room at 10:48 a.m.

46. At 10:55 a.m., Defendant Payne and Investigaor Burch of the Sheriff's Department entered the interview room and read Mr. Plantan his *Miranda* warning before interrogating him.

47. Mr. Plantan was detained and interrogated at the Hanover County Sherriff's Department after waiving his right to remain silent and his interrogation was recorded by the dedicated DVR system.

48. During this interrogation of Mr. Plantan, Defendant Payne accused Mr. Plantan of raping S.P. and alleged Mr. Plantan had a friend of his record the incident with his phone. This was an entirely false claim.

49. Defendant Payne also accused Mr. Plantan of meeting with an underage girl in Alabama via a dating app or other online dating service. This claim was entirely false as well and Mr. Plantan has never been to Alabama in his life.

50. During the interrogation, Mr. Plantan repeatedly requested a polygraph test as a means of corroborating the fact that none of the accusations were true.

51. Mr. Plantan consented to the search of his phone, provided his passcode, and consented to the search of other electronic storage devices as a means of negating the claims made against him.

52. Following his arrest, interrogation, and relocation to Pamunkey Regional Jail, Mr. Plantan was denied bond in the Juvenile and Domestic Relations District Court for Hanover County where he remained until his eventual release on November 5, 2021.

53. During Mr. Plantan's bail hearing, Ms. Mackenzie Babichenko, an Assistant Commonwealth's Attorney for Hanover County, argued that Mr. Plantan's bond should be denied because: 1.) he had a passport; 2.) he was under investigation in Henrico, Caroline, Chesterfield, and the City of Richmond for rape; and 3.) she claimed S.P. began to stop talking at the age of two years old because Mr. Plantan was raping her.

54. Not only had Mr. Plantan's passport expired nearly five years prior to the bond hearing, but there were no active investigations in the counties described by Ms. Babichenko and, more importantly, there was no evidence that S.P. suffered from any such abuse, whether at the hands of Mr. Plantan or anyone else, and it was egregious for Ms. Babichenko to suggest S.P.'s regressive nonverbal autism was a byproduct of such trauma.

55. Due to these false allegations of criminal activity and partially on the false claims presented by Ms. Babichenko, Mr. Plantan was denied bail and held at Pamunkey Regional Jail without bond.

56. When Mr. Plantan was charged with these crimes, Virginia had not yet addressed the legality of allowing child testimony through the use of technology as a means of facilitated communication and, among others, Defendant Payne should have known that after an exercise of due diligence.

57. Mr. Plantan made Defendant Payne aware that Hanover County Public Schools rejected or did not accept S.P.'s purportedly facilitated communication as a practice by which credit could be awarded and had rejected the practice for use in the schools previously.

58. Based on the history of facilitated communication, its lack of acceptance in the local school district, its criticism throughout the nation, and Defendant Atkinson's own reference to it getting a "bad rap" in her communications with S.P.'s school, it should have been apparent that this method of communication was not credible or, at a minimum, required more of a showing to rely on such techniques when seeking criminal arrest warrants.

59. At the preliminary hearing in Juvenile and Domestic Relations District Court, Defendant Atkinson testified to her facilitated communication with S.P. and, based on this testimony, the charges were certified to the grand jury.

60. Following the proceedings in Juvenile and Domestic Relations Court, Mr. Plantan was ultimately indicted on June 15, 2021 in the Hanover County Circuit Court on two of the four original charges for which he was arrested, those being the charges of the alleged rape, Va. Code § 18.2-61(A)(iii), and sodomy, Va. Code § 18.2-67.1(A)(1), between August 1, 2016 and October 1, 2016, when S.P. would have been nine years old.

61. At a pretrial hearing on October 19, 2021, Mr. Plantan's defense presented two well-established, internationally renowned speech pathology professors, Dr. James Todd and Dr. Howard Shane, who testified to the lack of validity underlying facilitated communication and the methods used with S.P. in this case.

62. At this hearing, Judge Harris deemed Dr. Todd and Dr. Shane to be expert witnesses.

63. As a result of this hearing, Judge Harris ordered a "double blind" test to be performed with S.P. as a means of determining the validity and credibility of the facilitated communication at issue.

64. On November 5, 2021, Defendant Smith acted through her agent, an attorney, and "offered" Mr. Plantan's attorney a compromise in the criminal proceedings by suggesting that Defendant Smith would drop the charges, or request for the criminal charges at issue to be dismissed, should Mr. Plantan agree to never see S.P. again.

65. Mr. Plantan's attorney represented the offer that was made by Defendant Smith's attorney to Judge Harris in the criminal court to provide context and evidence that Defendant Smith was attempting to leverage the criminal case against Mr. Plantan as a means of manipulating the custody and visitation matters that remained ongoing.

66. Upon learning of this attempt to leverage the criminal process as a means of gaining a more favorable outcome in those family law proceedings, Judge Harris granted Mr. Plantan a release from pretrial detention and admonished Defendant Smith's attempts to manipulate the judicial process.

67. Though Defendant Smith initially agreed to have S.P. engage in the "double blind" test that was scheduled for January 4, 2022, Defendant Smith ultimately informed the Commonwealth's

Attorney's office that she would not permit S.P. to be subjected to the court ordered evaluation of facilitated communication.

68. On November 11, 2021, Defendant Smith contacted the Hanover County Commonwealth's Attorney's office and made additional defamatory allegations against Mr. Plantan while explaining that she would not be permitting S.P. to engage in the required testing.

69. In this email, Defendant Smith called Mr. Plantan a "pedophile," stated that S.P. became nonverbal as a result of Mr. Plantan abusing S.P., and stated that Judge Uvanni's pretrial decision to have Mr. Plantan held without bond made him the "only person who has held [Mr. Plantan] accountable for his terrible behavior over the past ten years."

70. Additionally, Defendant Smith stated in her email that she was contesting Mr. Plantan's attempt to expunge this case from his record and she wanted Mr. Plantan to be placed or remain on a sexual offender registry "to increase the chance of keeping other children safe." She then realleged that Mr. Plantan "is still a pedophile."

71. As a result of Defendant Smith's refusal to allow S.P. to engage in the requisite testing to evaluate the facilitated communication at issue, the Commonwealth moved to dismiss the charges and the Court entered an order dismissing the case on November 23, 2021.

## CAUSE OF ACTION

### Count 1 – Violation of 42 U.S.C. § 1983
### Fourth and Fourteenth Amendment
### Unlawful Search, Seizure, Arrest, and Detention
### (Defendant Sheriff's Department and Defendant Payne)

72. Mr. Plantan repeats and realleges paragraphs 1 through 71 as if set forth fully herein.

73. Mr. Plantan had the right to be protected from unreasonable search and seizure, guaranteed by the Fourth Amendment to the United States Constitution, and incorporated against the States by the Fourteenth Amendment.

74. An arrest for a criminal charge made pursuant to a warrant must be predicated on probable cause of the commission of a crime.

75. Defendant Payne knew, or should have reasonably known, that the evidence attested to in the affidavit seeking a criminal charge and arrest warrant is not reliable, such officer may not proceed with seeking the warrant and any subsequent reliance on such a warrant by such an officer is not made in good faith reliance of a finding of probable cause.

76. Defendant Sheriff's Department and Defendant Payne in his official and individual capacity, violated Mr. Plantan's constitutionally protected right against unreasonable search and seizure when the Defendants sought criminal charges and arrest warrants based on evidence lacking probable cause, when they participated in the unlawful seizure, arrest, and detention of Mr. Plantan, and when the supervisory Defendants failed to train and intervene in constitutional violations taking place and failed to properly implement policies and train or supervise Defendant Payne and other law enforcement agents in their investigative techniques concerning those complainants or witnesses with special needs or development disabilities such as nonverbal autism and, based on this lack of training and adequate supervision, Defendant Payne sought and secured an arrest warrant predicated on materially flawed information that does not give rise to probable cause.

77. As a direct and foreseeable consequence of the Defendants' acts, policy decisions, omissions, failure to train, failure to intervene in the custom of violating individuals' constitutional rights, and failure to intervene in a reckless custom of investigatory omissions that are reasonably expected to result in the violation of an individual's constitutional rights, Mr. Plantan was unlawfully arrested by the Defendants and deprived of his rights protected by the Fourth and

Fourteenth Amendments to the United States Constitution and thereby suffered his loss of freedom, economic damages, loss of reputation, and severe emotional injury.

**COUNT 2 – 42 U.S.C. § 1983**
**Violation of Mr. Plantan's Fourteenth Amendment**
**Due Process – Interest in Family Relationship**
**(Defendants Sheriff's Department and Payne; Defendant Social Services, White, and Parham)**

78. Mr. Plantan repeats and realleges paragraphs 1 through 77.

79. Mr. Plantan had a right under the Fourteenth Amendment to the United States Constitution to be free from interference with or deprivation of parental rights to custody of his child without due process.

80. Defendant Sherriff's Department and Defendant Payne violated Mr. Plantan's rights when they cause Mr. Plantan to be arrested and removed from his scheduled visitation with S.P. on January 9, 2021 and barred him from being in her presence throughout his pretrial detention due to criminal charges premised on evidence that was not sufficient for the purposes of a criminal complaint or for the purpose of influencing the investigation and adjudication concerning child abuse and parental rights.

81. Defendant Hanover County Department of Social Services, and Defendant White and Defendant Parham in their individual and official capacities, relied on the same faulty facilitated communications when issuing an internal decision which deemed the allegations to be founded for a Level One infraction of sexual abuse of a child.

82. Such a finding has subsequently resulted in the loss of Mr. Plantan's custody and visitation rights with S.P. altogether and Mr. Plantan remains on a registry or other recorded list due to this Level One finding.

83. Defendants promulgated and/or carried out these acts and omissions, official policies, orders and directives described above, intentionally and deliberately, with wanton and reckless disregard for the civil and constitutional rights, privileges, and sensibilities of Mr. Plantan.

84. As a direct and foreseeable consequence of these policy decisions, the failure to train, and the failure to intervene when a custom of constitutional violations was occurring, Mr. Plantan was deprived of his rights under the Fourteenth Amendment to the United States Constitution, and thereby suffered loss of his freedom, economic damages, loss of reputation, and severe emotional injury.

**COUNT 3 – Malicious Prosecution**
**(Defendant Smith; Defendants Sheriff's Department and Defendant Payne; Defendants Cornerstone, Atkinson, Mastrangolia, and Whitlow)**

85. Mr. Plantan repeats and realleges paragraphs 1 through 84.

86. The criminal proceedings were initiated, instituted, and advanced by Defendant Smith's conduct in this matter against Mr. Plantan.

87. Such proceedings were terminated in favor of Mr. Plantan on November 23, 2021.

88. Defendant Smith maliciously initiated, and made efforts to continue, the prosecutions of Mr. Plantan without probable cause to believe a crime had been committed.

89. Defendant Smith maliciously initiated and sought to maintain the criminal proceedings to terminate Mr. Plantan's parental rights, without any evidence or cause to support such an action, and relied solely on a method of facilitated communication that she knew or should have known to have material issues which undermine its credibility as a legitimate communicative practice.

90. Defendant Smith's actions were done with malice; that is, they were done for a purpose other than that of securing the proper adjudication of the claim and with the intent to initiate a process by which Mr. Plantan would receive a criminal conviction for a felony.

91. Defendant Smith caused, and acted in concert with, Defendant Cornerstone and its agents Defendants Atkinson, Mastrangolia, and Whitlow, to intentionally report the purported allegations made by S.P. to Defendant Social Services and the Defendant law enforcement agents as a means of seeking a criminal arrest, detention, and conviction with an intent to alter, hinder, frustrate, and ultimately eliminate Mr. Plantan's rights and privileges to maintain an otherwise protected parental relationship with his daughter, S.P.

92. Defendant Smith's actions were not privileged as they were not for any proper purpose, nor could she have reasonably believed they were for a proper purpose, as the methods of communication were not credible, she knew they were not credible or accepted, she knew that many of the injuries she claimed S.P. to have resulted from Mr. Plantan's alleged conduct were actually received via alternative tortious injuries by a medical provider as she claimed in unrelated, previous litigation, and she took all steps possible to avoid an objectively reasonable inquiry into the legitimacy of the practice of facilitated communication.

93. Defendant Smith knew, or should have known, that the veracity of those claims purportedly made by S.P. via facilitated communication were suspect, at best, and such questionable methods of communication cannot give rise to credible criminal complaints and such complaints would give rise to Mr. Plantan's arrest, detention, and criminal prosecution.

94. As a direct and proximate result of the conduct of those Defendants listed in Count 3, Mr. Plantan suffered humiliation, mortification, overwhelming stress, imprisonment, loss of the custody of their children, embarrassment, sleeplessness, loss of reputation, anxiety, depression,

physical discomfort and abuse, and other damages that may arise during the course of discovery.

95. Mr. Plantan has been diagnosed with developing clinical depression since his criminal charges were initiated.

96. As a pretrial detainee, Mr. Plantan suffered through multiple sexual harassment incidents that would otherwise run afoul of the Prison Rape Elimination Act.

97. As a pretrial detainee, Mr. Plantan's life was threatened, he suffered significant financial loss as a result of the costs necessary to defend himself as well as those costs suffered from lost wages and the negative impact on his reputation and ability to secure and maintain gainful employment.

98. As a result of his pretrial detention, Mr. Plantan suffers from ongoing episodes of anxiety and depression and he continues to see a therapist for these and other trauma-related issues on a weekly basis.

99. Defendant Smith's conduct in this matter, which proximately caused Mr. Plantan's injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Mr. Plantan's physical and emotional wellbeing.

100.    Defendant Smith intentionally sought to have Mr. Plantan prosecuted based on information she knew or should have known was not credible, she knew or should have known that the statements that lacked any physical corroboration, and there were no witnesses or other evidence.

101.    Defendant Smith knew that facilitated communication was not recognized as a legitimate practice and knew that the methods by which S.P. was communicating with Defendant Cornerstone and its agents was not a technique that recognized by S.P.'s schools.

102.    In spite of her knowledge that the method of facilitated communication was subject to significant scrutiny and criticism, Defendant Smith insisted on bringing these claims against Mr. Plantan for the purpose of, and not limited to, influencing collateral proceedings involving custody and visitation as well as a means of maliciously impacting Mr. Plantan's well-being and liberty in violation of his constitutional rights.

### COUNT 4 – False Arrest
**(Defendant Smith; Defendants Sheriff's Department and Payne; Defendants Cornerstone, Atkinson, Mastrangolia, and Whitlow)**

103.    Mr. Plantan repeats and realleges paragraphs 1 through 102.

104.    Defendant Sheriff's Department and Defendant Payne in his official and individual capacity, arrested, physically restrained, and confined Mr. Plantan and deprived him of his personal liberty and freedom of movement for a period of nearly ten months.

105.    Mr. Plantan was conscious of his confinement at all times relevant.

106.    Defendant Sheriff's Department, through its employees and agents, and including Defendant Payne, engaged in actions that were intentional and directly resulted in the arrest and actual confinement of Mr. Plantan.

107.    Mr. Plantan's arrest was unlawful and the actions of Defendant Cornerstone and Defendant Sheriff's Department were not for any proper purpose, nor could the latter's agents have reasonably believed their action for a proper purpose due to the lack of any reasonable or responsible inquiry into the validity of the facilitated communication techniques used to communicate with S.P. or those processes by which the allegations against Mr. Plantan were made.

108.    The imprisonment and restraint were against Mr. Plantan's will.

109.     The Defendant Sheriff's Department and Defendant Payne accomplished Mr. Plantan's arrest and lengthy confinement by force, a show of force, and physical restraint and the deprivation of Mr. Plantan's liberty and freedom was intentional, unlawful, unprivileged, and without probable cause.

110.     Such an arrest and confinement was intentionally inflicted by Defendant Smith via the use and hire of Defendant Cornerstone and Cornerstone's agents, Defendants Atkinson, Mastrangolia, and Whitlow, and these Defendants intentionally supplied serious criminal allegations concerning Mr. Plantan to Defendant Sheriff's Department and Defendant Payne with the knowledge and intent that such communications would result in Mr. Plantan's arrest.

111.     As a direct and proximate result of the Defendants' conduct, Mr. Plantan suffered from an arrest predicated on less than probable cause and suffered humiliation, mortification, imprisonment, loss of custody and visitation of his child, overwhelming stress, depression, embarrassment, sleeplessness, anxiety, financial hardship, physical harm and restraint, lost wages, the costs of his criminal defense, and other damage that may arise during the course of discovery.

112.     The Defendants' conduct in this matter, which proximately caused Plaintiffs' injuries and damages, was grossly negligent because they were so reckless that they demonstrated a substantial lack of concern for Mr. Plantan's physical and emotional wellbeing and the negative impact on his wellbeing was known, or should have been known, to come as a direct result from the criminal adjudicatory process instigated by the reporting of unsubstantiated claims via facilitated communication.

### COUNT 5 – Intentional Infliction of Emotional Distress
### (Defendant Smith)

113.     Mr. Plantan repeats and realleges paragraphs 1 through 112.

114.    Defendant Smith's conduct at issue, specifically the procurement of facilitated communication for S.P. after knowing it relied on unacceptable or unrecognized procedures, and the subsequent reliance on such procedures when making reports to law enforcement, was intentional or reckless.

115.    Defendant Smith reported these unsubstantiated claims by S.P. to law enforcement without any corroboration such as physical evidence, other witnesses, or reference to contemporary statements by S.P. at the time of the alleged abuse.

116.    The reporting and promotion of the criminal charges against Mr. Plantan based on a communication practice that was known to be subject to significant criticism and known to go unrecognized by the local school system, among other institutions, was outrageous and intolerable.

117.    The intentional or reckless reporting of these claims was used as a means of manipulating the judicial process concerning custody and visitation and resulted in Mr. Plantan's deprivation of liberty for approximately ten months in pretrial detention.

118.    The use of the criminal justice system and the intentional or reckless reporting of unsubstantiated claims predicated on a communication practice that is not accepted by state entities such as S.P.'s school was reckless and intentional.

119.    The reporting of these claims did directly cause Mr. Plantan to be subject to physical harm, that being his arrest, interrogation, incarceration, and the subsequent physical injuries that he incurred while being held at Pamunkey Regional Jail.

120.    Defendant Smith's reporting of these unsubstantiated claims via the unaccepted method of facilitated communication directly resulted in Mr. Plantan's physical restraint and the resulting emotion distress from these allegations, the criminal prosecution, and the findings of the

Defendant Social Services resulted in Mr. Plantan suffering from severe emotional distress, including but not limited to severe anxiety, paranoia, depression, embarrassment, and psychological trauma.

121. The limitation and curtailing of Mr. Plantan's parental rights and ability to see or visit with S.P. has also caused severe emotional distress.

122. Defendant Smith's use of facilitated communication for S.P. and her reporting of the purported claims from S.P. against Mr. Plantan was made to intentionally injure Mr. Plantan, in many fashions, including psychological damage, and he has suffered as a result.

## COUNT 6 – Abuse of Process
### (Defendant Smith)

123. Mr. Plantan repeats and realleges paragraphs 1 through 122.

124. Defendant Smith abused and manipulated the legal process by using it for her ulterior motive or purpose to cause vexation, trouble, embarrassment, and damage to Mr. Plantan's standing in his dispute for custody and visitation with S.P., in his reputation professionally, personally, and in the community, and as a means to advance personal disdain for Mr. Plantan generally.

125. Defendant Smith's acts included, but are not limited to, her repeated and continued use of "facilitated communication" in violation of appropriate protocols and her subjecting S.P. to repeated and coercive questioning via discredited measures as a means of advancing claims against Mr. Plantan in criminal and administrative proceedings.

126. The use and reliance on facilitated communication as a means of advancing these allegations against Mr. Plantan in the criminal and social services' investigations was improper and not in the regular pursuit of such allegations and claims, but for other purposes.

127.    Defendant Smith's actions were not for any proper purpose, nor could Defendant Smith have reasonably believed they were for a proper purpose, as the method of communication she insisted for S.P. is known to lack credibility and there was no other evidence to support the purported allegations.

128.    The misuse of the judicial process was improper since Defendant Smith knew, or should have known, that the allegations regarding Mr. Plantan were false.

129.    As a direct and proximate result of Defendant Smith's improper use of the judicial process, Mr. Plantan suffered humiliation, mortification, overwhelming stress, imprisonment, loss of the custody of their children, embarrassment, sleeplessness, loss of reputation, anxiety, and other damage that may arise during the course of discovery.

130.    Defendants' conduct in this matter, which proximately caused Plaintiffs' injuries and damages, was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Plaintiffs' physical and emotional wellbeing.

**COUNT 7 – Gross Negligence**
**(Defendant Sheriff's Department, Defendant Social Services, Defendant Cornerstone, and Defendants Payne, White, Parham, Atkinson, Mastrangolia, and Whitlow)**

131.    Mr. Plantan repeats and realleges paragraphs 1 through 130.

132.    With little or no training, experience, or expertise in the use or administration of facilitated communication, and with no understanding of the merits of such practice or the lack thereof, Defendant Sheriff's Department and Defendant Payne relied on the statements of third parties as to S.P.'s allegations and took them at face-value without any due diligence or material investigation into the merits of facilitated communication and whether such a practice was credible or accepted for investigatory purposes.

133. Relying on this unproven practice of facilitated communication and the allegations purportedly coming from S.P., Defendant Payne sought and received criminal charges for Mr. Plantan and caused him to be arrested, prosecuted, and detained.

134. Defendant Sheriff's Department and Defendant Payne have a duty to adopt and execute policies concerning the reasonable inquiry and investigation into particular practices, including those of communicating with victims, and these Defendants should have readily foreseen that their failure to maintain policies requiring the exercise of due care and diligence in their investigation, including investigation into the validity of facilitated communication, would severely harm Mr. Plantan in this case.

135. During his interrogation on January 9, 2021, Mr. Plantan told Defendant Payne that the local schools did not accept S.P.'s facilitated communication as a legitimate, accredited, or officially recognized method of communication and therefore the results thereof were not accepted by the schools for the purposes of graded assignments or other graded assessments.

136. Defendant Sheriff's Department and Defendant Payne did not engage in the requisite degree of additional inquiry necessary to determine whether facilitated communication is a legitimate or judicially-accepted practice for the purposes of providing testimony or criminal complaints.

137. Defendant Sheriff's Department and Defendant Payne have a duty to Mr. Plantan, and the Commonwealth generally, to adhere to the requisite degree of reasonable investigation into matters prior to seeking criminal complaints and arresting a suspect.

138. Defendant Sheriff's Department and Defendant Payne's actions and omissions in this regard were grossly negligent because they knew, should have known, and had reason to know, that facilitated communication is not an accepted practice or technique for the purposes of

providing credible testimony from a nonverbal autistic child and any reasonable inquiry into the technique would have revealed obvious, material concerns that undermine the veracity of the claims made in Mr. Plantan's criminal case.

139. During S.P.'s facilitated communication, a third party is always holding her hand in order for typing to take place.

140. This, along with other signals, should have given Defendant Sheriff's Department and Defendant Payne reason to conduct additional investigation, as there was no established method by which the Defendants could corroborate that S.P., rather than the facilitator, is the true source of those statements provided.

141. Defendant Sheriff's Department, Defendant Payne, Defendant Smith, Defendant Cornerstone, and Defendant Atkinson omitted any arrangement for an independent "naïve" facilitator to corroborate S.P.'s purported allegations.

142. Defendant Sheriff's Department and Defendant Payne failed to investigate or consider the fact that the Hanover County Public School system did not endorse or recognize facilitated communication for the purposes of official communications.

143. Defendant Sheriff's Department and Defendant Payne did not engage in any practice to assess protocols for facilitating S.P.'s communications to determine whether those used during the investigation were credible.

144. Defendant Sheriff's Department and Defendant Payne omitted any investigation or report as to the rejection of facilitated communication by courts, school systems, medical professionals, behavioral therapists, and prominent stakeholder organizations involved in assisting those with nonverbal autism.

145.    A review of S.P.'s history with facilitated communication would have readily revealed reasons for skepticism of the purported allegations given the school's rejection of the practice for S.P. in 2016 and its unwillingness to accept the communications for the purposes of graded assessment.

146.    Additionally, Defendant Atkinson's own statements in her October 27, 2020 letter to Hanover Schools, made in her capacity as an agent and representative of Defendant Cornerstone, revealed the fact that facilitated communication is generally understood for having a "bad rap," meaning it has a negative reputation and is rejected due to it having been deemed an unreliable method of communication.

147.    On the basis of those false allegations provided by Defendant Smith, Defendant Cornerstone, and its facilitators Defendants Atkinson, Mastrangolia, and Whitlow, Defendant Payne subjected Mr. Plantan to criminal charges, formal arrest, interrogation, and a lengthy pre-trial detention.

148.    On the basis of these false allegations by Defendants Smith, Defendant Cornerstone, and Defendants Atkinson, Mastrangolia, and Whitlow, and the same failure to engage in any due diligence to validate or corroborate the merits of facilitated communication, Defendant White and Defendant Parham of the Hanover County Department of Social Services initiated an investigation into the purported sexual abuse.

149.    Defendant Social Services, via Defendant White and Defendant Parham, omitted the same or similar requisite degree of inquiry and investigation into the validity of facilitated communication and, taking the allegations as true, these Defendants rendered a finding on February 5, 2021 that a Level One sexual abuse claim was founded against Mr. Plantan.

150.    Defendant Social Services, Defendant White, and Defendant Parham had a duty to Mr. Plantan, S.P., and the Commonwealth generally, to adhere to the requisite degree of reasonable investigation into matters prior to adjudicating those claims purportedly made alleging activity that could result in a finding of a Level One violation.

151.    Defendant Social Services, Defendant White, and Defendant Parham failed to engage in the requisite degree of inquiry and due diligence in their investigation and evaluation of communications made by complainants and Defendant Social Services has a duty to institute and maintain policies governing the investigation of abuse claims to account for those with special needs and developmental disabilities.

152.    Defendant Social Services, acting through Defendants White and Parham, failed to craft, institute, maintain, or adhere to any policies concerning the corroboration or investigation into purported claims made by those using facilitated communication.

153.    The findings of Defendant Social Services, Defendant White, and Defendant Parham remain on Mr. Plantan's record and he is listed on the Virginia Child Abuse and Neglect Central Registry as a result.

154.    These findings resulted in the loss of Mr. Plantan's custody and visitation rights with S.P. and therefore violate his parental rights.

155.    Defendants Smith, Cornerstone, Atkinson, Mastrongolia, and Whitlow provided affirmative misinformation and misdirection to law enforcement, including suggestions that S.P.'s disabilities were limited to motor planning and she was cognitively operating at a higher threshold, though their own reports listed her cognitive development ranges to place her in a similar category as an otherwise unencumbered three-year old child.

156. Defendants Smith, Cornerstone, Atkinson, Mastrongolia, and Whitlow caused the reporting of statements purportedly made by S.P. via a technique that these Defendants knew or should have known to be lacking acceptance by public bodies, including S.P.'s school system, and they knew or should have known that allegations of criminal sexual conduct via facilitated communication were not reliable for the purposes of a criminal complaint.

157. On the basis of these various false allegations made by Defendants Smith, Defendant Cornerstone, and Defendants Atkinson, Mastrongolia, and Whitlow, as well as the false assertions concerning the validity of facilitated communication and S.P.'s cognitive development, Mr. Plantan was formally arrested, charged, and detained for nearly ten months losing all custody and visitation with his only daughter.

158. Defendants Cornerstone, Atkinson, Mastrongolia, and Whitlow maintain a duty to Mr. Plantan, as the father of S.P., to forego the repetition of otherwise unverified statements concerning criminal allegations purportedly made by S.P via a faulty method of communication.

159. While Mr. Plantan was in custody, Defendant Cornerstone, via Defendant Atkinson and her fellow Defendant facilitators, continued to voluntarily meet with and assist Defendant Smith, Defendant Sheriff's Department, Defendant Payne, Defendant Social Services, Defendants White and Parham, and other law enforcement agents by making S.P. available and providing themselves or staff to "facilitate" S.P.'s communication with investigators.

160. It was the duty of Defendant Sheriff's Department, Defendant Social Services, Defendant Payne, Defendant White, and Defendant Parham to use ordinary care in their undertaking with regard to S.P. and their investigation into Mr. Plantan as set forth above.

161. Ordinary care in this context consists of engaging in an assessment and critique of the validity, or lack thereof, of claims concerning the credibility, value, admissibility, and accuracy of facilitated communication.

162. Defendant Cornerstone, and its Defendant agents Atkinson, Mastrongolia, and Whitlow, were hired and paid by Defendant Smith to purportedly "facilitate" or effectively "speak for" S.P. in this investigation.

163. In this role, Defendants Cornerstone, Atkinson, Mastrongolia, and Whitlow had a duty to ensure that their practices were legitimate and credible and that the assertions they made on behalf of S.P. were true and accurate representations of what she actually communicated.

164. Within the scope of this duty, Defendants Cornerstone, Atkinson, Mastrongolia, and Whitlow are responsible for establishing the validity of their procedures or they otherwise become liable for those assertions they claim to have facilitated.

165. Defendants Cornerstone, Atkinson, Mastrongolia, and Whitlow knew or should have known that the allegations they were purportedly communicating to law enforcement from S.P. were of the nature that would reasonably be understood to result in criminal charges and the loss of liberty associated with the criminal process.

166. Defendant Cornerstone, as an organization offering the aid of individual licensed therapists via Defendants Atkinson, Mastrongolia, and Whitlow, owed a duty to Mr. Plantan to adhere to industry standards concerning their assistance to S.P. as a nonverbal autistic child and that duty included the forbearance of advancing claims to law enforcement agents as if such statements were accurate or were made via techniques or practices with an identifiable, objective method for corroboration.

167. Defendant Sheriff's Department, Defendant Payne, Defendant Social Services, and Defendants White and Parham failed to exercise the ordinary degree of care in meeting their duties as investigators for the Defendant Sheriff's Department or Defendant Social Services Department, respectively.

168. As a direct and proximate result of those actions and omissions by Defendants Cornerstone, Atkinson, Mastrongolia, and Whitlow, Mr. Plantan suffered humiliation, mortification, overwhelming stress, imprisonment, loss of custody and the right to visit his only daughter, embarrassment, sleeplessness, loss of reputation, anxiety, financial hardship, the loss of employment, and ten months of his life in the outside world.

169. As a direct and proximate result of Defendant Sheriff's Department and Defendant Payne's negligent actions, Mr. Plantan suffered physical restraint, physical harm, humiliation, mortification, overwhelming stress, imprisonment, loss of custody and the right to visit his only daughter, embarrassment, sleeplessness, loss of reputation, anxiety, depression, financial hardship, the loss of employment, and ten months of his life in the outside world.

170. As a direct and proximate result of Defendant Social Services and Defendant White and Parhams' action, Mr. Plantan suffered humiliation, mortification, overwhelming stress, loss of custody and the right to visit his only daughter, mortification, embarrassment, sleeplessness, loss of reputation, anxiety, and he remains subject to the Level One finding while listed on Virginia's registry concerning child abuse and neglect.

171. Defendant Sheriff's Department and Defendant Payne's conduct in this matter proximately caused Mr. Plantan's injuries and damages and was grossly negligent because it was so reckless that it demonstrated a substantial lack of concern for Mr. Plantan's physical and emotional well-being and a lack of concern for the veracity of the criminal complaints, or the lack thereof.

172.   Defendant Social Services and Defendants White and Parham's conduct in this matter proximately caused Mr. Plantan's injuries and damages and was grossly negligent because it was so reckless that it demonstrated a lack of concern for Mr. Plantan's emotional well-being and a lack of concern for his rights as a parent of S.P.

173.   Defendants Cornerstone, Atkinson, Mastrongolia, and Whitlow's conduct in this matter proximately caused Mr. Plantan's injuries and damages and was grossly negligent because it was so reckless that it demonstrated a lack of concern for Mr. Plantan's emotional, physical, financial, and overall well-being and a lack of concern for the impact that would come as a reasonably foreseeable result of those allegations they made purportedly on S.P.'s behalf.

## PRAYER FOR RELIEF

WHEREFORE, Mr. Plantan respectfully requests for this Court to award the following relief:

A.  Actual, compensatory, and nominal damages in whatever amount Mr. Plantan is deemed to be entitled, and in an amount of more than $10,000,000.

B.  Exemplary damages in whatever amount Mr. Plantan is found to be entitled.

C.  Punitive damages in whatever amount Mr. Plantan is found to be entitled.

D.  An injunction out of this Court:

1. requiring Defendant Sheriff's Department (including, but not limited to, Defendant Payne) and Defendant Social Services (including, but not limited to, Defendants White and Parham) to provide to all employees or agents who interview children at least ten (10) hours of training annually on appropriate methods of interviewing children, at least two (2) hours of which specifically address interviewing children with special needs;

2. prohibiting Defendant Sheriff's Department and Defendant Social Services from permitting employees or agents to interview children without properly documented annual training in appropriate techniques for interviewing children and children with special needs;

3. requiring Defendant Sheriff's Department and Defendant Social Services to provide at least five (5) hours of training annually on lawful seizure, detention and interrogation of individuals to all employees or agents who take individuals in to custody as part of their job responsibilities;

4. ordering any administrative findings, records, or orders from Defendant Social Services concerning Mr. Plantan and predicated on those allegations purportedly made by S.P. via facilitated communication to be vacated, reversed, dismissed, and sealed.

E. An award of interest, costs, and reasonable attorney's fees.

Respectfully submitted,

_____/s_____

Elliott M. Harding, Esq. (VSB No. 90442)
*Counsel for Mr. Kevin Plantan*
Harding Counsel, PLLC
608 Elizabeth Ave.
Charlottesville, VA 22901
P: 434-962-8465
Filed this day: June 1, 2022          E: Elliott@HardingCounsel.com

## RELIANCE ON JURY DEMAND

The Plaintiff, Mr. Kevin Plantan, by and through counsel, demands a trial by jury of all issues presented in this case.

_____/s_____

Elliott M. Harding, Esq. (VSB No. 90442)
*Counsel for Mr. Kevin Plantan*
Harding Counsel, PLLC
608 Elizabeth Ave.
Charlottesville, VA 22901
P: 434-962-8465
E: Elliott@HardingCounsel.com