**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

**KEVIN PLANTAN,**

       **Plaintiff,**

    v.                                    **Civil Action No. 3:22cv407**

**KELLY SMITH,** *et al.*,

       **Defendants.**

### <u>MEMORANDUM OPINION</u>

This matter comes before the Court on two Motions to Dismiss.   Cornerstone Therapy Associates, LLC ("Cornerstone") and Wendy Atkinson (collectively with Cornerstone, the "Cornerstone Defendants) filed a Motion to Dismiss Plaintiff Kevin Plantan's Complaint.  (ECF No. 21.)  The Hanover County Sheriff's Department (the "HCSD") and Sergeant Troy Payne's (collectively with the HCSD, the "Hanover Defendants") also filed a Motion to Dismiss Plantan's Complaint.  (ECF No. 23 (collectively with ECF No. 21, the "Motions to Dismiss").)

Plantan brings this action against HCSD and Sergeant Troy Payne, both in Payne's individual capacity and in his official capacity as an agent of the HCSD.  He also sues Cornerstone and Cornerstone's employee, Wendy Atkinson.  Finally, he names his ex-wife, Kelly Smith, as a defendant.[1]

---

[1] Plantan originally named six additional parties who have since been dismissed.  They include:  two Cornerstone employees, Olivia Mastrangolia and Danielle Whitlow; the Hanover County Department of Social Services (the "HCDSS"); Ahnaia White, in her individual capacity and in her official capacity as an agent of the HCDSS; and, Devon Parham, in his individual capacity and in his official capacity as an agent of the HCDSS.

On August 17, 2022, Plantan filed a Motion to Voluntarily Dismiss Mastrangolia and Whitlow, which the Court granted.  (ECF Nos. 25, 26.)  On September 21, 2022, Plantan filed a

Plantan claims that the Hanover Defendants violated his constitutional rights as protected

by 42 U.S.C. § 1983[2] ("Section 1983") and the Fourth[3] and Fourteenth[4] Amendments of the

---

On August 17, 2022, Plantan filed a Motion to Voluntarily Dismiss Mastrangolia and Whitlow, which the Court granted. (ECF Nos. 25, 26.) On September 21, 2022, Plantan filed a Motion to Voluntarily Dismiss the HCDSS, White, and Parham, which the Court also granted. (ECF Nos. 31, 32.)

[2] This statute provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

[3] The Fourth Amendment of the United States Constitution states:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

[4] The Fourteenth Amendment of the United States Constitution provides, in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

United States Constitution.  (ECF No. 1, at 10–12.)  Plantan also brings Virginia state law claims

of malicious prosecution, false arrest, and gross negligence against both the Cornerstone

Defendants and the Hanover Defendants.  (ECF No. 1, at 13–17, 20–28.)

The Cornerstone and Hanover Defendants both filed Motions to Dismiss Plantan's

Complaint.  (ECF Nos. 21, 23.)  Smith filed an Answer.[5]  (ECF No. 13.)  Later, Smith properly

filed a Motion for Judgment on the Pleadings, which the Court will address by separate opinion.

(ECF No. 33.)  Plantan responded to both Motions to Dismiss.  (ECF Nos. 27, 28.)[6]  The

Cornerstone and Hanover Defendants replied.  (ECF Nos. 29, 30.)

These matters are ripe for adjudication.  The Court dispenses with oral argument because

the materials before it adequately present the facts and legal contentions, and argument would

not aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331

and 1367.[7]  For the reasons that follow, the Court will grant the Hanover Defendants' Motion to

Dismiss in its entirety and will grant the Cornerstone Defendants' Motion to Dismiss in part.

---

[5] Smith filed her Answer and a Motion to Dismiss on the same day.  (ECF Nos. 13, 14.)
Smith's Answer came before the Motion to Dismiss, so the Court denied the Motion to Dismiss
under Federal Rule of Civil Procedure 12(b).  (ECF No. 20.)

[6] In the Hanover Defendants' Reply, they correctly note that Plantan filed his Response a
day late without seeking leave from the Court to make an untimely filing.  (ECF No. 30, at 1–2.)
The Court declines the Hanover Defendants' request to "strike [Plantan's] Response in
Opposition."  (ECF No. 30, at 2.)
    The Court reminds Plantan that he must adhere to the deadlines set by the Court, the
Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the
Eastern District of Virginia.  In this instance, Plantan would have been required to seek an
extension of time to file beyond the deadline.  *See* Fed. R. Civ. P. 6(b)(1)(B).

[7] "The district courts shall have original jurisdiction of all civil actions arising under the
Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331(a).  Plantan brings two of
his claims under Section 1983 and the Fourth and Fourteenth Amendments.  (ECF No. 1, at 10,
12.)  The Court exercises supplemental jurisdiction over Plantan's state law claims, as they arise
from the same case or controversy as his federal law claims.  28 U.S.C. § 1367(a).

This action will proceed as to one count against Cornerstone and Wendy Atkinson (Count III.C). The Court will continue to hear the four counts against Kelly Smith.[8]

## I.   Factual and Procedural Background

### A.   Factual Background[9]

Plantan's claims stem from his arrest and subsequent detention based on allegations that he sexually assaulted his minor daughter, S.P. (ECF No. 1 ¶¶ 38–71.) Kevin Plantan and Kelly Smith married in 2001. (ECF No. 1 ¶ 16.) The couple's only child, S.P., who was fifteen years old at the time of the Complaint's filing, began to show "signs of cognitive decline or regressive tendencies in her learning and development" at two years old. (ECF No. 1 ¶¶ 17–18.) Around this age, S.P. "became nonverbal" and "had severe limitations in her ability to communicate." (ECF No. 1 ¶ 21.) At three years old, clinicians diagnosed S.P. with "regressive autism" and "severe dyspraxia, a motor-function disorder that severely limits, alters, and impacts her ability to control her own physical movements." (ECF No. 1 ¶¶ 19–20.)

In 2010, Plantan and Smith divorced. (ECF No. 1 ¶ 16.) Smith eventually re-married, and S.P. lived in Hanover County, Virginia, with Smith, her new husband, and her husband's two children. (ECF No. 1 ¶ 22.) Plantan continued to live in Virginia. (ECF No. 1 ¶ 23.) He had scheduled visits with S.P. (ECF No. 1 ¶ 23.)

---

[8] The Court will not address the counts brought against Kelly in this opinion. They are: Count III.D (Malicious Prosecution); Count IV.D (False Arrest); Count V (Intentional Infliction of Emotional Distress); and Count VI (Abuse of Process).

[9] For purposes of the Rule 12(b)(6) Motion to Dismiss, the Court will accept the well-pleaded factual allegations in Plantan's Complaint, (ECF No. 1), as true and draw all reasonable inferences in favor of Plantan. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., Md.*, 684 F.3d 462, 467 (4th Cir. 2012) ("a court 'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'") (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

In 2014, at approximately seven years old, S.P. began using "a 'letter board' as a means of trying to conduct a practice known as 'facilitated communication.'"   (ECF No. 1 ¶ 24.) Facilitated communication is a "technique" for communication that "involves the purported speaker . . . pointing to individual letters on a board via assistance of another individual, or 'facilitator,' as a means of spelling individual words." (ECF No. 1 ¶ 25.)  The facilitator "offers support [to the speaker] via physical and verbal prompts," including "the physical touching and placing of the speaker's fingers on the relevant letters." (ECF No. 1 ¶ 26.)

Plantan asserts that facilitated communication is "a disproven, controversial, nonscientific, unaccepted, and unrecognized practice insofar as it does not involve reliable or credible communication with those suffering from nonverbal autism." (ECF No. 1 ¶ 29.)  In 2016, Hanover County Public Schools informed Smith that they would not accept S.P.'s use of facilitated communication as a "legitimate practice." (ECF No. 1 ¶ 27.)  "[C]ourts throughout the United States [have] rejected the practice [for use in] witness testimony" and "the American Speech and Hearing Association has taken a position completely rejecting" the practice.  (ECF No. 1 ¶ 32.)  S.P. thus discontinued her use of facilitated communication in 2016.  (ECF No. 1 ¶ 27.)

In 2019, Plantan "relocated to Florida," but "maintain[ed] scheduled visits with S.P." in Virginia.  (ECF No. 1 ¶ 23.)  In the same year, Smith "hired . . . Cornerstone and specifically . . . Wendy Atkinson, an [o]ccupational [t]herapist and agent of Cornerstone," to introduce a new form of facilitated communication to S.P.  (ECF No. 1 ¶¶ 34–35.)  The new form of facilitated communication "involved the introduction of a keyboard or keypad on an iPad tablet device[,] rather than using the physical letter board that was previously rejected by Hanover [County] Public Schools." (ECF No. 1 ¶ 36.)  However, "[a]fter reviewing the iPad communication and

assertions from . . . Atkinson concerning her work with S.P. . . . , Hanover County Public

Schools continued to reject [the] use [of facilitated communication] for the purposes of S.P.'s

graded assignments or assessments." (ECF No. 1 ¶ 37.)  In her discussions with Hanover County

Public Schools, Atkinson admitted that she knew facilitated communication had gotten a "bad

rap." (ECF No. 1 ¶ 58.)

On independent occasions, three Cornerstone employees, including Atkinson,

"purportedly facilitated S.P. as she used an iPad or other device as a means of making"

allegations that "Plantan sexually abused her in 2013 and 2016, [at] six and nine years old

respectively." (ECF No. 1 ¶¶ 38–39.)  Each Cornerstone facilitator "reported these purported

allegations." (ECF No. 1 ¶ 40.)  "Based solely on these allegations that purportedly came from

S.P.'s use of facilitated communication, and without any other . . . evidence or . . .

corroboration, [Sergeant] Payne . . . obtained felony criminal charges and arrest warrants for . . .

Plantan on January 8, 2021." (ECF No. 1 ¶ 41.)  Payne charged Plantan with "two counts of rape

and two counts of sodomy." (ECF No. 1 ¶ 41.)  At the time Payne sought these charges against

Plantan, "Virginia had not yet addressed the legality of allowing child testimony through the use

of technology as a means of facilitated communication." (ECF No. 1 ¶ 56.)

On January 8, 2021, Smith provided information to Payne, including the vehicle she

believed Plantan had rented, regarding a visit Plantan had scheduled with S.P. at Courthouse

Park in Hanover County. (ECF No. 1 ¶¶ 42–43.)  The next day, January 9, 2021, at

approximately 10:00 a.m., Plantan arrived at the park for his scheduled visit when "deputies

from the [HCSD], acting pursuant to . . . Payne's directive, approached . . . Plantan on foot and

asked for [his] identification." (ECF No. 1 ¶ 44.)  At 10:02 a.m., the deputies "arrested . . .

Plantan, searched him incident to arrest, searched [and towed] his van, . . . and transported him to the Sheriff's Department." (ECF No. 1 ¶ 45.)

At the Sheriff's Department, Payne and a Hanover County Investigator read Plantan his so-called *Miranda* warnings and, after Plantan waived his right to remain silent, questioned him. (ECF No. 1 ¶¶ 46–47.) During the interrogation, "Payne accused . . . Plantan of raping S.P. and alleged . . . Plantan had [his] friend . . . record the incident with his phone." (ECF No. 1 ¶ 48.) Payne also accused Plantan "of meeting with an underage girl in Alabama via a dating app or other online dating service." (ECF No. 1 ¶ 49.) Plantan denied these allegations during the interrogation, "repeatedly request[ing] a polygraph test as a means of corroborating [his innocence]." (ECF No. 1 ¶ 50.) Plantan also "consented to the search of his phone . . . and . . . other electronic storage devices as a means of negating the claims made against him." (ECF No. 1 ¶ 51.) During the interview, Plantan informed Payne "that Hanover County Public Schools rejected or did not accept . . . facilitated communication as a practice by which credit could be awarded." (ECF No. 1 ¶ 57.) At the conclusion of the interview, Hanover County authorities placed Plantan in the Pamunkey Regional Jail. (ECF No. 1 ¶ 52.)

At Plantan's bond hearing in the Hanover Juvenile and Domestic Relations District Court, "Atkinson testified to her facilitated communication with S.P." (ECF No. 1 ¶ 59.) Based on this testimony, the [Hanover Juvenile and Domestic Relations District Court certified the] charges [against Plantan] . . .to the grand jury." (ECF No. 1 ¶ 59.) During the same hearing, the Assistant Commonwealth's Attorney for Hanover County argued for detention because Plantan had a passport (without mentioning that it was expired), because he was under investigation for rape in three counties other than Henrico (which he was not), and because S.P.'s regressive autism developed at age two because Plantan was raping her (without proper basis for that

7

allegation). (ECF No. 1 ¶¶ 53, 54.)  The Hanover Juvenile and Domestic Relations District Court denied Plantan bond, so he remained in the Pamunkey Regional Jail. (ECF No. 1 ¶ 52.)

On June 15, 2021, the Hanover County Circuit Court grand jury indicted Plantan "on two of the four original charges for which [Hanover County authorities] arrested [him]," one count of rape and one count of sodomy in 2016. (ECF No. 1 ¶ 60.)

At a pretrial hearing on October 19, 2021, "Plantan's defense presented two well-established, internationally renowned speech pathology professors," whom the Hanover County Circuit Court judge recognized as expert witnesses. (ECF No. 1 ¶¶ 61–62.)  The expert witnesses testified that a "lack of validity [exists] underlying facilitated communication and the methods used with S.P." (ECF No. 1 ¶ 61.)  "As a result of this hearing, [the Hanover County Circuit Court judge] ordered a 'double blind' test [for] . . . S.P. as a means of determining the validity and credibility of the facilitated communication at issue." (ECF No. 1 ¶ 63.)

On November 5, 2021, Smith "act[ing] through her agent, an attorney, . . . 'offered' . . . Plantan's attorney a compromise . . . by suggesting that . . . Smith would drop the charges, or request for the criminal charges at issue to be dismissed, should . . . Plantan agree to never see S.P. again." (ECF No. 1 ¶ 64.)  Plantan's attorney told the Hanover County Circuit Court judge that this "offer" demonstrated that Smith "attempt[ed] to leverage the criminal case against . . . Plantan as a means of manipulating the custody and visitation matters that remained ongoing [between Smith and Plantan]." (ECF No. 1 ¶ 65.)  Based on this representation, the Hanover County Circuit Court judge granted Plantan "release from pretrial detention and admonished . . . Smith's attempts to manipulate the judicial process." (ECF No. 1 ¶ 66.)  The Hanover County authorities released Plantan from the Pamunkey Regional Jail on November 5, 2021. (ECF No. 1 ¶ 52.)

8

Although Smith "initially agreed to . . . the 'double blind' test, . . .[on November 11, 2021,] Smith . . . informed the [Hanover County] Commonwealth's Attorney's [O]ffice that she would not permit S.P. [to participate in] the court[-]ordered evaluation of facilitated communication." (ECF No. 1 ¶ 67.)  In an email informing the Hanover County Commonwealth's Attorney's Office that she would not allow the "double blind" test, Smith added that she would "contest[] . . . Plantan's attempt to expunge th[e] case from his record and [that] she wanted . . . Plantan to be placed or remain on a sexual offender registry 'to increase the chance of keeping other children safe.'" (ECF No. 1 ¶¶ 69–70.)

Because Smith would not allow S.P. to "engage in the requisite testing to evaluate the facilitated communication at issue, the [Hanover County] Commonwealth['s Attorney] moved to dismiss the charges [against Plantan,] and the [Hanover County Circuit Court] entered an order dismissing the case on November 23, 2021." (ECF No. 1 ¶ 71.)

### B.    Procedural Background

Plantan brings seven Counts in his Complaint, five of which apply to either the Hanover Defendants, the Cornerstone Defendants, or both:[10]

> **Count I:**  Unreasonable Search and Seizure, in violation of Section 1983 and the Fourth and Fourteenth Amendment, against the Hanover Defendants.

>> **Count I.A:**  Sergeant Payne, in his official and individual capacity, improperly sought criminal charges and effectuated an arrest and search of Plantan "based on evidence lacking probable cause." (ECF No. 1 ¶ 76.) Payne lacked probable cause because he "knew, or should have reasonably known," that the facilitated communication claims that Plantan sexually assaulted his daughter, S.P., were "not reliable." (ECF No. 1 ¶¶ 75–76.) ("Payne Unreasonable Search and Seizure Count.")

>> **Count I.B:**  The HCSD failed to "intervene in constitutional violations taking place and failed to properly implement policies and train or

---

[10] As noted earlier, the Court will not address the counts brought against Kelly Smith in this opinion.  They are:  Count III.D (Malicious Prosecution); Count IV.D (False Arrest); Count V (Intentional Infliction of Emotional Distress); and Count VI (Abuse of Process).

supervise" Payne and other law enforcement agents "in their investigative techniques concerning . . . complainants or witnesses with special needs or development disabilities." (ECF No. 1 ¶ 76.) ("HCSD Unreasonable Search and Seizure Count.")

**Count II:**  Deprivation of Substantive Due Process Rights, in violation of Section 1983 and the Fourteenth Amendment, against the Hanover Defendants.

    **Count II.A:**  Sergeant Payne[11] violated Plantan's "right to . . . be free from interference with or deprivation of parental rights to custody of his child without due process" when he arrested and detained Plantan and deprived him of his custody and visitation rights on the basis of faulty facilitated communication claims. (ECF No. 1 ¶¶ 79–81.) ("Payne Familial Relationship Due Process Count.")

    **Count II.B:**  Sergeant Payne's due process violation was a "direct and foreseeable consequence" of HCSD's "policy decisions, . . . failure to train, and . . . failure to intervene." (ECF No. 1 ¶ 84.) ("HCSD Familial Relationship Due Process Count.")

**Count III:**  Malicious Prosecution, in violation of Virginia common law, against the Hanover Defendants and the Cornerstone Defendants.[12]

    **Count III.A:**  Smith "maliciously initiated" the prosecution of Plantan with the cooperation of Sergeant Payne,[13] who sought criminal charges and arrested Plantan without probable cause. (ECF No. 1 ¶¶ 88, 91.) ("Payne Malicious Prosecution Count.")

    **Count III.B:**  Smith "maliciously initiated" the prosecution of Plantan with the cooperation of the HCSD, the law enforcement agency that sought criminal charges and arrested Plantan without probable cause. (ECF No. 1 ¶¶ 88, 91.) ("HCSD Malicious Prosecution Count.")

---

[11] Unlike his allegations in Counts I.A and IV.A, Plantan's Familial Relationship Due Process Count (Count II.A) does not specifically say he is suing Payne both in his individual and official capacity.

[12] As noted earlier, the Court will not address the counts brought against Kelly Smith in this opinion, but the Malicious Prosecution Count against Smith (Count III.D) will remain.

[13] Unlike his allegations in Count I.A and IV.A, Plantan's Malicious Prosecution Count (Count III.A) does not specifically say he is suing Payne both in his individual and official capacity. In fact, Plantan does not name Payne in any of the paragraphs under his Malicious Prosecution heading except to say that Smith caused the Cornerstone Defendants to report the allegations to "the Defendant law enforcement agents." (ECF No. 1 ¶ 91.)

**Count III.C:** Smith "maliciously initiated" the prosecution of Plantan with the cooperation of the Cornerstone Defendants, the occupational therapists who produced and reported S.P's facilitated communication claims of sexual abuse. (ECF No. 1 ¶¶ 88, 91.) ("Cornerstone Defendants Malicious Prosecution Count.")

**Count IV:** False Arrest, in violation of Virginia common law, against the Hanover Defendants and the Cornerstone Defendants.[14]

**Count IV.A:** Sergeant Payne, in his official and individual capacity, "physically restrained[] and confined . . . Plantan and deprived him of his personal liberty and freedom of movement for a period of nearly ten months" based on an unlawful arrest. (ECF No. 1 ¶¶ 104, 106.) ("Payne False Arrest Count.")

**Count IV.B:** The HCSD, through its employees and agents, "physically restrained[] and confined . . . Plantan and deprived him of his personal liberty and freedom of movement for a period of nearly ten months" based on an unlawful arrest. (ECF No. 1 ¶¶ 104, 106.) ("HCSD False Arrest Count.")

**Count IV.C:** Smith "intentionally inflicted" Plantan's unlawful arrest and confinement "via the use and hire of [the Cornerstone Defendants, who] . . . intentionally supplied serious criminal allegations concerning . . . Plantan to [the authorities] with the knowledge and intent that such communications would result in" Plantan's arrest. (ECF No. 1 ¶ 110.) ("Cornerstone Defendants False Arrest Count.")

**Count VII:** Gross Negligence, in violation of Virginia common law, against the Hanover Defendants and the Cornerstone Defendants.

**Count VII.A:** Sergeant Payne[15] acted with gross negligence when he relied on the "unproven practice of facilitated communication and the allegations purportedly coming from S.P. [when he] sought and received criminal charges for . . . Plantan and caused hi[s] . . .arrest[], prosecut[ion], and det[ention]." (ECF No. 1 ¶ 133.) ("Payne Gross Negligence Count.")

---

[14] As noted earlier, the Court will not address the counts brought against Kelly Smith in this opinion, but the False Arrest Count against Smith (Count IV.D) will continue.

[15] Unlike his allegations in Counts I.A and IV.A, Plantan's Gross Negligence Count (Count VII.A) does not specifically say he is suing Payne both in his individual and official capacity.

**Count VII.B:** The HCSD acted with gross negligence when it failed to "adopt and execute policies concerning the reasonable inquiry and investigation into particular practices, including those of communicating with victims." (ECF No. 1 ¶ 134.) ("HCSD Gross Negligence Count.")

**Count VII.C:** The Cornerstone Defendants acted with gross negligence when they reported "statements purportedly made by S.P. via a technique that [they] knew or should have known . . . w[as] not reliable" or when they reported false "representations of what [S.P.] actually communicated." (ECF No. 1 ¶¶ 156, 163.) ("Cornerstone Defendants Gross Negligence Count.")

The Cornerstone and Hanover Defendants[16] both filed Motions to Dismiss all counts against them in Plantan's Complaint. (ECF Nos. 21, 23.) Plantan responded to the Cornerstone Defendants' Motion to Dismiss, (ECF No. 27), and the Hanover Defendants' Motion to Dismiss, (ECF No. 28). The Cornerstone and Hanover Defendants replied. (ECF Nos. 29, 30.)

For the following reasons, the Court will grant the Hanover Defendants' Motion to Dismiss in full and grant the Cornerstone Defendants' Motion to Dismiss in part. The Court will dismiss all counts against the HCSD and Sergeant Troy Payne (Counts I, II, III, IV, and VII). The Court will dismiss Counts IV and VII against Cornerstone and Wendy Atkinson. Count III will remain against Cornerstone and Wendy Atkinson.

---

[16] The Hanover Defendants properly filed an exhibit to their Motion to Dismiss: the court documents from Plantan's criminal case in front of the Hanover County Circuit Court. (ECF Nos. 24-1–24-12.) "[A] court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn v. Fed. Ins. Co.,* 164 F.App'x 395, 396–97 (4th Cir. 2006) (citations omitted).

While Plantan does not specifically assert that he disputes the authenticity of the exhibits provided by the Hanover Defendants, he does oppose the Court's consideration of the records outside of the Complaint. He states that "all parties must be given a reasonable opportunity to present all the material that is pertinent" for a Motion for Summary Judgment. (ECF No. 28, at 2.) Absent an agreement as to their authenticity, the Court declines to consider the records in its review of the Hanover Defendants' Motion to Dismiss.

## II.  Standard of Review:  Rule 12(b)(6)

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint;

importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the

applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.

1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356

(1990)).  To survive Rule 12(b)(6) scrutiny, a complaint must contain sufficient factual

information to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for

relief must contain . . . a short and plain statement of the claim showing that the pleader is

entitled to relief.").  Mere "labels and conclusions" declaring that the plaintiff is entitled to relief

are not enough.  *Twombly*, 550 U.S. at 555.  Thus, "naked assertions of wrongdoing necessitate

some factual enhancement within the complaint to cross the line between possibility and

plausibility of entitlement to relief."  *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)

(quoting *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

A complaint achieves facial plausibility when the facts contained therein support a

reasonable inference that the defendant is liable for the misconduct alleged.  *See Twombly*, 550

U.S. at 556; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).  This analysis is context-

specific and requires "the reviewing court to draw on its judicial experience and common sense."

*Giacomelli*, 588 F.3d at 193 (citation omitted).  The court must assume all well-pleaded factual

allegations to be true and determine whether, viewed in the light most favorable to the plaintiff,

they "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Kensington*,

684 F.3d at 467 (finding that the court in deciding a Rule 12(b)(6) motion to dismiss "'must

accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable

13

inferences in favor of the plaintiff'" (quoting *Kolon Indus.*, 637 F.3d at 440)).  This principle applies only to factual allegations; however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

"If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); *see Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998); *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985).  However, "a court may consider official public records, documents central to plaintiff's claim, and documents sufficiently referred to in the complaint [without converting a Rule 12(b)(6) motion into one for summary judgment] so long as the authenticity of these documents is not disputed." *Witthohn*, 164 F. App'x at 396–97 (citing *Alt. Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001); *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999); *Gasner v. Cty. of Dinwiddie*, 162 F.R.D. 280, 282 (E.D. Va. 1995)).

### III.  Analysis

The Hanover Defendants and the Cornerstone Defendants move to dismiss all Counts against them in Plantan's Complaint.

First, because Plantan cannot properly sue the HCSD, the Court will grant the Motion to Dismiss with respect to all claims against the HCSD (Counts I.B, II.B, III.B, IV.B, and VII.B).

As to the counts against Sergeant Payne, the Court will dismiss the Payne Unreasonable Search and Seizure Count (Count I.A) and the Payne Familial Relationship Due Process Count (Count II.A) because Sergeant Payne is protected by qualified immunity.  The Court will grant

14

the Motion to Dismiss the Payne Malicious Prosecution Count (Count III.A) and the Payne False

Arrest Count. (Count IV.A) because Sergeant Payne acted in good faith and with reasonable

belief that he lawfully arrested Plantan.  Finally, the Court will grant the Motion to Dismiss the

Payne Gross Negligence Count (Count VII.A) because no cause of action exists in Virginia for

negligent police investigations.

As to the Cornerstone Defendants, the Court determines that Plantan has sufficiently

alleged his Cornerstone Defendants Malicious Prosecution Count (Count III.C).  However, the

Court will grant the Motion to Dismiss the Cornerstone Defendants' False Arrest Count (Count

IV.C) because the valid warrant used to arrest Plantan immunizes the Cornerstone Defendants

from liability.  Finally, the Court will grant the Motion to Dismiss the Cornerstone Defendants'

Gross Negligence Count (Count VII.C) because the Cornerstone Defendants did not have a

provider-patient relationship with Plantan, meaning they did not owe him the duty of care that

serves as a prerequisite to such a claim.

A.    **Plantan's Claims Against the HCSD Must Be Dismissed Because the HCSD Is Not a Cognizable Legal Entity**

As an initial matter, the Court will dismiss all counts in the Complaint against the

Hanover County Sheriff's Department (the "HCSD") because the HCSD is not a cognizable

legal entity that can be sued.

"An entity is not *sui juris* if it is an agency of the municipality and not a separate legal

entity." *Francis v. Woody*, Case No. 3:09cv235, 2009 WL 1442015, at *6 (E.D. Va. May 22,

2009) (quoting *Corbin v. Woolums*, Case No. 3:08cv173, 2008 WL 2149911, at *4 (E.D. Va.

May 20, 2008)).  Furthermore, a "Sheriff's Office is not a properly named party defendant

because the . . .Sheriff is an independent constitutional officer; not a legally recognized entity

separate from the Sheriff himself and the county government." *Clark v. Beasley,* 3:03cv1074,

2004 WL 3222732, at *4 (E.D.Va. July 8, 2004); *see also Revene v. Charles County Comm'rs,* 882 F.2d 870, 874 (4th Cir.1989) ("The separate claim against the 'Office of Sheriff' was rightly dismissed on the basis that this 'office' is not a cognizable legal entity separate from the Sheriff in his official capacity and the county government of which this 'office' is simply an agency." (citations omitted)).

Therefore, the Court will grant the Motion to Dismiss all Counts (Counts I.B, II.B, III.B, IV.B, and VII.B) against the Hanover County Sheriff's Department.

### B. Plantan Does Not Sufficiently Allege a Basis to Overcome Payne's Qualified Immunity to Succeed on His Underlying Fourth and Fourteenth Amendment Violations in Counts I.A and II.A

Next, the Court turns to the constitutional claims Plantan brings against Sergeant Payne. Plantan asserts that Sergeant Payne subjected him to an unreasonable search and seizure (Count I.A) and deprived him of due process in his right to familial integrity (II.A) when he relied on S.P's facilitated communication claims of sexual abuse to seek, without investigation as to the validity of facilitated communication, criminal charges and an arrest warrant. (ECF No. 1, at 10, 12.) The Court will dismiss Counts I.A and II.A against Payne, both individually and officially,[17] on qualified immunity grounds.

---

[17] Plantan only brings his Unreasonable Search and Seizure Count (Count I.A), and not his Familial Relationship Due Process Count (Count II.A), against Payne in both his individual and official capacity. However, for either Count, Plantan does not state a claim against Payne in his official capacity.

"It is well settled that 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.'" *Woody,* 2009 WL 1442015, at *4 (quoting *Williams-El v. Dunning,* 816 F. Supp. 418, 420 (E.D. Va. 1993). As previously discussed, the Hanover County Sheriff's Department, or office, is not a cognizable legal entity that can be sued. In addition, a suit against the Hanover County Sheriff, as an officer created by the Virginia Constitution, is a suit against the state. *Id.* (citing *McCoy v. Chesapeake Correctional Ctr.,* 788 F. Supp. 890, 893 (E.D.Va. 1992); *Harris v. Hayter,* 970 F. Supp. 500, 502 (W.D. Va. 1997)). "[S]tates and governmental entities that are considered arms of the State are immune from suit under the Eleventh Amendment and are not 'persons' under [Section] 1983." *Id.* (quoting *Howlett v. Rose,* 496 U.S. 356, 365 (1990)).

16

1.    **Legal Standard:  Qualified Immunity**

When a plaintiff sues a government official in their individual capacity, "qualified immunity protects them 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sharpe v. Winterville Police Dept.*, 59 F.4th 674, 682–83 (4th Cir. 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  The United States Court of Appeals for the Fourth Circuit has held that when determining whether qualified immunity applies, a court "ask[s] both 'whether a constitutional violation occurred' and 'whether the right violated was clearly established' at the time of the official's conduct."  *Id.* at 683 (quoting *Melgar ex rel. Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010)).  Courts have discretion to choose which of these questions to consider first. *Hunsberger v. Wood*, 570 F.3d 546, 552 (4th Cir. 2009) (citation omitted); *Pearson*, 555 U.S. at 235–36 (holding that the "judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.")).

---

If Plantan attempts to hold the municipality of Hanover County liable through his suit against Payne in his official capacity, he would need to do so by sufficiently alleging a policy or custom of the municipality to establish *Monell* liability.  *Hunter v. Town of Mocksville, North Carolina*, 897 F.3d 538, 553 (4th Cir. 2018) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)).  In his Complaint, Plantan states only "labels and conclusions" declaring that he is entitled to relief against Payne in his official capacity, *Twombly*, 550 U.S. at 555, without any "factual enhancement . . . to cross the line between possibility and plausibility of entitlement to relief," *Giacomelli*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S. at 557).  In addition, Plantan did not respond to the Hanover Defendants' *Monell* liability arguments included in their Motion to Dismiss.

Accordingly, the Court will focus its analysis on the constitutional claims brought against Payne in his individual capacity but will dismiss the Counts against him both in his individual and official capacity.

When considering the second question, the right can be clearly established by "cases of controlling authority in this jurisdiction" or "by a consensus of persuasive authority from other jurisdictions." *Sharpe*, 59 F.4th at 683 (citing *Owens ex rel. Owens v. Lott*, 372 F.3d 267, 280 (4th Cir. 2004)).  Regardless of where the sources originate, they must "place[] the statutory or constitutional question beyond debate." *Id.*  (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (per curiam)).  Establishing the right "does not require 'a case directly on point,'" *id.* (quoting *Kisela*, 138 S. Ct. at 1152), but "the right's contours must be 'sufficiently clear that a reasonable official would understand that what he is doing violates that right,'" *id.* (quoting *Cannon v. Vill. of Bald Head Island*, 891 F.3d 489, 497 (4th Cir. 2018)).

### 2.    Payne is Protected by Qualified Immunity Because the Law Did Not Clearly Establish the Constitutional Right

Qualified immunity protects Sergeant Payne unless the law clearly established, at the time of Plantan's arrest, that reliance on facilitated communication accusations violated the Fourth and Fourteenth Amendments.[18]  The communications of abuse came from S.P. during facilitated communications with Atkinson and two other Cornerstone employees.

---

[18] Plantan's Unreasonable Search and Seizure Count against Payne (Count I.A) clearly alleges an unlawful arrest, and consequently, an unlawful search incident to arrest, because of Sergeant Payne's reliance on facilitated communication claims to seek criminal charges and a warrant against Plantan.  (ECF No. 1 ¶ 76.)  It is not clear to the Court whether Plantan's Payne Familial Relationship Due Process Count (Count II.A) is brought as a substantive due process claim or a procedural due process claim.  However, whether Plantan alleges that Sergeant Payne improperly interfered with his familial relationship, or that Sergeant Payne did not follow proper procedures when interfering with Plantan's familial relationship, both claims allege that Payne caused the constitutional violation by improperly relying on facilitated communication accusations to seek criminal charges and a warrant.

18

Here, no precedent in this jurisdiction, nor consensus of authority from other jurisdictions, establish that Payne acted unconstitutionally.[19] Thus, Plantan's Payne Unreasonable Search and Seizure Count (Count I.A) and Payne Familial Relationship Due Process Count (Count II.A) must fail.

First, no "controlling authority" in this jurisdiction establishes the constitutionally required method for handling allegations made by non-verbal and physically disabled victims or those utilizing facilitated communication to make their allegations. *See Sharpe*, 59 F.4th 674, at 683 (citing *Lott*, 372 F.3d at 280). Plantan does not cite, nor has the Court found, any case law addressing this issue in this jurisdiction or in the Fourth Circuit. Indeed, Plantan himself confirms that, at the time Sergeant Payne sought the criminal charges against him, "Virginia had not yet addressed the legality of allowing child testimony through the use of technology as a means of facilitated communication." (ECF No. 1 ¶ 56.)

Second, even if the Virginia courts or legislature had addressed the use of facilitated communication in *courtroom testimony*, such precedent would not create a "controlling authority" on whether facilitated communication claims could support *criminal investigations*, which require probable cause for arrest. *See Sharpe*, 59 F.4th 674 at 683 (finding that there need not be a case "directly on point," but that the right's contours must be "sufficiently clear that a reasonable official would understand that what he is doing violates that right").

Finally, even though courts addressing facilitated communication have largely been critical of it (and perhaps rightly so), no consensus of persuasive authority from other jurisdictions establishes the constitutional right not to be arrested solely on accusations via

---

[19] The Court will use its discretion to determine whether the right violated in this case was clearly established before determining that a constitutional violation occurred. *See Hunsberger*, 570 F.3d at 552 (citing *Pearson*, 555 U.S. at 235–36).

facilitated communication. *See id.* (citing *Lott*, 372 F.3d at 280). The Court found just five cases that speak to the use of facilitated communication as a basis for investigations to support revoking custody or seeking criminal charges, the most recent of which is a Vermont Supreme Court case that is 18 years old. *See e.g.*, *Czechorowski v. State*, 872 A.2d 883, 893 (Vt. 2005) ("[A]lthough [the] plaintiff claims that [facilitated communication] has been shown to be utterly unreliable" and "[a]lthough some jurisdictions have rejected evidence based on [facilitated communication] . . . we discern nothing in the record or the law to suggest that a reasonable person in [the defendant's position] could not have relied on the report's conclusion that [the claims] were credible.").

All courts addressing facilitated communication as a basis for a criminal or custody investigation have found the practice to be unadvisable. But, the five cases addressing circumstances where facilitated communication undergirded criminal charges or the revocation of custody do not reach a consensus as to the constitutionality of an officer's reliance on the claims. All five cases—dated between 1994 and 2005—found that, given the paucity of information about its efficacy, the complainants had exercised objectively reasonable reliance on the facilitated communications they considered. Two courts in the Northern District of New York and one in the Eastern District of Pennsylvania have so concluded. *See, e.g.*, *Covell ex rel. Johnson v. Cnty. of Oswego*, 165 F. Supp. 2d 241, 248–49 (N.D.N.Y 2001) (finding that if the defendant social workers "had relied solely on facilitated communications evidence to either remove [the child] from his home or force [the father] to leave, it would categorically hold that [the father's Constitutional] rights . . . would have been violated . . . given the unreliability of facilitated communication within the scientific community and the ease in which the facilitator and not the autistic child can control the communication output," but holding that the agents

20

were entitled to qualified immunity because it was not clearly established that "such allegations of sexual abuse as were reported . . . were necessarily unreliable").

Indeed, a second Northern District of New York federal district court noted years earlier that "[t]he apparent disagreement between the experts over whether facilitated communication is a reliable form of communication, in and of itself, demonstrates that reasonable officials could disagree about the propriety of the Defendants' actions." *Zappala v. Albicelli*, 954 F. Supp. 538, 544–46 (N.D.N.Y. 1997) (finding various county employees were protected under qualified immunity for their reliance on facilitated communication claims because "it certainly was not clearly established law in January 1992, that such allegations of sexual abuse. . . were necessarily unreliable" and that employees' reliance on that type of accusation was objectively reasonable especially given expert disagreement on the issue); *see also Callahan v. Lancaster-Lebanon Intermediate Unit 13*, 880 F. Supp. 319, 334–35 (E.D. Pa. 1994) ("While it is not our function to express any scientific opinion as to the validity or invalidity of [facilitated communication] as a reliable means of communication, we do find from a legal perspective that, at the time in question, it was objectively reasonable for all defendants to have relied on allegations of child abuse received" and "we find no clearly established Fourth Amendment principles that would have indicated to the defendants that their actions were Constitutionally improper.").

State courts agree. Not only did the Vermont Supreme Court so find in 2005, but also four years earlier in 2001, a Massachusetts appellate court found reliance on facilitated communication objectively reasonable because no reason existed to believe that the speech pathologist knew, should have known, or even doubted, that the use of facilitated communication was unreliable. *Cooney v. Dept. of Mental Retardation*, 754 N.E.2d 92, 100 (Mass. App. Ct. 2001).

21

Because no precedent exists in this jurisdiction or the Fourth Circuit, and no consensus of authority from other jurisdictions establishes otherwise, it was objectively reasonable for Sergeant Payne to rely on the allegations of sexual abuse received through facilitated communication. Nor would it have been reasonable for Payne to have known about cases from other jurisdiction that are eighteen to twenty-nine years old. No clearly established constitutional right existed at the time of Plantan's arrest, so Sergeant Payne did not act unconstitutionally. Payne had no reason to know, nor should he have known, that reliance on facilitated communication was not reliable. His actions were objectively reasonable and protected by qualified immunity. Thus, Plantan cannot maintain his Unreasonable Search and Seizure Count (Count I.A) and Familial Relationship Due Process Count (Count II.A) against Payne.

The Court will grant the Motion to Dismiss the Fourth and Fourteenth Amendment claims against Sergeant Payne in his individual and official capacity.

### C.    Plantan Does Not Sufficiently Allege Malicious Prosecution in Count III as to Payne, But Does as to the Cornerstone Defendants

Having evaluated Plantan's constitutional claims, the Court turns to Plantan's state law claims. The Court exercises its discretion to exercise supplemental jurisdiction over Plantan's state law claims, despite its dismissal of the constitutional claims against the Hanover Defendants, because Counts I.A and II.A against Sergeant Payne will be dismissed without prejudice.

Plantan's first state law claim alleges malicious prosecution against both Sergeant Payne (Count III.A) and the Cornerstone Defendants (Count III.C). The Court will dismiss the Payne Malicious Prosecution Count (Count III.A) because Plantan fails to sufficiently allege that Payne

22

acted with malice.[20]  However, based on a generous reading afforded to Plantan's Complaint on

a motion to dismiss, Plantan does sufficiently allege malice as to the Cornerstone Defendants.

Thus, the Court will deny the Motion to Dismiss the Malicious Prosecution Count (Count III.C)

against the Cornerstone Defendants.

### 1.    Legal Standard:  Malicious Prosecution

To state a claim for malicious prosecution under Virginia law, a plaintiff has the burden

to prove that "the prosecution was (1) malicious, (2) instituted by or with the cooperation of the

defendant, (3) without probable cause, and (4) terminated in a manner not unfavorable to the

plaintiff." *Bennett v. R & L Carriers Shared Servs., LLC*, 492 Fed. App'x. 315, 316 (4th Cir.

2012) (quoting *Reilly v. Shepherd*, 643 S.E.2d 216, 218 (Va. 2007)).

"In Virginia, 'malice' means 'any controlling motive other than a good faith desire to

further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the

guilty are punished.'" *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 756 (E.D. Va. 2016) (quoting

*Hudson v. Lanier*, 497 S.E.2d 471, 473 (Va. 1998)).  In certain "aggravated circumstance[s]," the

"want of probable cause alone can serve as legally sufficient evidence to support an inference of

malice."  *Id.* (quoting *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 276 (Va. 1967); *see also Pigg*,

152 S.E.2d at 276 (finding that when an officer refused to review the sales receipt of the

individual he accused of stealing before arresting her, the disregard of information constituted an

"aggravated circumstance which support[ed] the finding of the jury that there was such a want of

probable cause to warrant an inference of legal malice")).  "[T]he fact that [a malicious

---

[20] Unlike his allegations in Count I.A and IV.A, Plantan's Malicious Prosecution Count (Count III.A) does not specifically say he is suing Payne both in his individual and official capacity.

prosecution plaintiff does] not label and identify explicitly an alleged improver motive . . . is of no consequence. The Court is not aware of any authority that requires otherwise." *Id.* (quoting *Bennett v. R & L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 521–24 (E.D. Va. 2010) *aff'd*, 492 Fed. App'x. 315 (second and third alteration in original).

To determine that the prosecution was "instituted by or with the cooperation of the defendant, . . . the Court must ascertain whether a defendant affirmatively, actively, and voluntarily took steps to instigate or to participate in the arrest of the [plaintiff] and whether the defendant exercised some level of control over the decision to have the plaintiff arrested." *Id.* at 763 (quoting *Bennett*, 744 F. Supp. 2d at 511–12) (internal quotation marks omitted). While "a witness who provides the police with incorrect information during a criminal investigation [does not] ipso facto 'institute[]' or 'procure[]' the prosecution if he provides that information unequivocally[,] . . . the critical question is whether the witness provided the police with his honest or good faith belief of the facts." *Brice v. Nkaru*, 220 F.3d 233, 238 (4th Cir. 2000) (citing *King v. Martin*, 142 S.E. 358, 361 (Va. 1928)); *see also King*, 142 S.E. at 361 (distinguishing between the actions of a witness who acted in good faith and was thus shielded from civil liability, from those of a witness reporting with questionable truthfulness).

"In Virginia, in the context of a malicious prosecution action, probable cause is defined as 'knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected." *Bennett*, 492 Fed. App'x. at 324 (quoting *Andrews v. Ring*, 585 S.E.2d 780, 786 (Va. 2003)); *see also Ring*, 585 S.E.2d at 786 (finding that the relevant inquiry is whether the non-arresting defendants had probable cause to believe the plaintiff committed a crime *at the time they instituted the prosecution* by expressing their wish to press charges to a police officer).

### 2.   Plantan Does Not State a Claim for Malicious Prosecution Against Payne Because Plantan Fails to Allege that Payne Acted Maliciously

Plantan cannot, to the extent his Complaint can be read to bring one, succeed on his Malicious Prosecution Count against Payne (Count III.A) because Plantan does not allege any facts to support a finding that Sergeant Payne sought criminal charges and arrested Plantan with malice.  Any such count would be a most liberal reading of the Complaint because Sergeant Payne is not named in the body of Count III at all, nor does Plantan mention actions by Payne in either his individual or official capacity.[21]  But to the extent Plantan's Complaint can be read to charge Payne with malicious prosecution, Plantan fails to meet the necessary first factor to state a malicious prosecution claim against Payne.  *See Bennett*, 492 Fed. App'x. at 316.

The Court need not decide whether Payne had probable cause to arrest Plantan because the Court does not find such a "want of probable cause" that it could alone "serve as legally sufficient evidence to support an inference of malice."[22]  *Daniczek*, 156 F. Supp. at 739 (quoting *Pigg*, 152 S.E.2d at 276).  In addition, the information Plantan provided to Payne would not necessarily signal to a police officer that a criminal investigation cannot rely on facilitated communication claims (compared to the fact that a sales receipt necessarily would indicate to an officer that a theft has not occurred).  *See id.*  Because Plantan does not sufficiently claim that such a "want of probable cause" exists to support an inference of Payne's malice, Plantan would

---

[21] Plantan names Sergeant Payne as a defendant underneath the title of his Malicious Prosecution Count in his Complaint.  However, Plantan does not name Payne in any of the following paragraphs except to say that Smith caused the Cornerstone Defendants to report the allegations to "the Defendant law enforcement agents."  (ECF No. 1 ¶ 91.)

[22] Unlike the plaintiff in the *Pigg* case, Plantan alleges that only *after—not before—his arrest*, did he inform Payne that S.P.'s school did not accept facilitated communication for graded assignments.  152 S.E.2d at 276 (allowing an inference of malice when an officer refused to review a sales receipt showing innocence of theft *before* arresting her).

need to allege that Payne did in fact act with malice for his malicious prosecution claim against Payne to succeed.

But Plantan does not make any factual allegations that would support that Payne had "any controlling motive other than a good faith desire to further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are punished'" in seeking criminal charges against him. *See Daniczek*, 156 F. Supp. 3d at 756 (quoting *Hudson*, 497 S.E.2d at 473). Plantan faults Payne for seeking criminal charges and arresting him "[b]ased solely on the[ facilitated communication] allegations . . . and without any other physical or testimonial evidence or any other witness or display of corroboration," (ECF No. 1 ¶ 41), but his Complaint is bereft of facts from which the Court could infer that Payne acted with malice in doing so.

Because Plantan fails to allege any facts supporting a finding that Sergeant Payne sought criminal charges and arrested Plantan with malice, Plantan fails to meet the first prong of the malicious prosecution analysis. Thus, the Court will grant the Motion to Dismiss the Malicious Prosecution Count against Payne (Count III.A).

### 3. Plantan States a Claim for Malicious Prosecution Against the Cornerstone Defendants Because He Plausibly Alleges That They Acted Maliciously

In contrast, the allegations in Plantan's Complaint sufficiently satisfies the elements of the Virginia malicious prosecution analysis as to the Cornerstone Defendants. Therefore, the Court will deny the Motion to Dismiss the Malicious Prosecution Count against the Cornerstone Defendants (Count III.C).

As to the first factor needed to properly bring a malicious prosecution claim, a favorable reading of Plantan's complaint provides sufficient allegations that the Cornerstone Defendants reported the alleged claims of sexual abuse against Plantan with malice. *See Bennett*, 492 Fed.

26

App'x. at 316. Plantan's Complaint describes facilitated communication as a "technique" that involves "the purported speaker . . . pointing to individual letters on a board via assistance of another individual, or a 'facilitator,' as a means of spelling individual words." (ECF No. 1 ¶ 25.) Plantan asserts that facilitated communication is "a disproven, controversial, nonscientific, unaccepted, and unrecognized practice insofar as it does not involve reliable or credible communication with those suffering from nonverbal autism." (ECF No. 1 ¶ 29.) In the light most favorable to Plantan, Plantan claims that S.P. does not speak through facilitated communication at all. This would mean that any claims of sexual assault could derive only from the Cornerstone Defendants.[23] Plantan plausibly states that accusations of sexual assault reported by the Cornerstone Defendant, when S.P. had not made them, would establish malice.[24]

As to the second factor to establish malicious prosecution, the Court determines whether the prosecution was "instituted by or with the cooperation of the [Cornerstone Defendants]." *Bennett*, 492 Fed. App'x. at 316. While "a witness who provides the police with incorrect information during a criminal investigation [does not] ipso facto 'institute[]' or 'procure[]' the

---

[23] In their Motion to Dismiss, the Hanover Defendants, who are not the defendants at issue in this claim, point to areas in the Hanover County Circuit Court record where Plantan made statements indicating that he believed S.P. speaks through facilitated communication. (ECF No. 24-5, at 6–7.) The Court is not considering the Hanover County Circuit Court record, but if it *were* to consider these statements, they would not change the Court's reading of Plantan's complaint in the light most favorable to him. Plantan's understanding of facilitated communication at the time of his arrest in 2019 does not necessarily reflect his understanding at the time of the filing of his complaint in 2022.

[24] Because Plantan sufficiently alleges that the Cornerstone Defendants reported the alleged claims of sexual abuse with malice, the Cornerstone Defendants' claims of immunity pursuant to Virginia Code § 63.2-1512 falter.

Section 63.2-1512 provides that "[a]ny person making a report pursuant to § 63.2-1509[, which requires the reporting of suspected child abuse from certain professionals,] . . . shall be immune from any civil or criminal liability in connection therewith, unless it is proven that such person *acted in bad faith or with malicious intent*." Va. Code § 63.2-1512 (emphasis added).

prosecution if he [or she] provides that information unequivocally[,] . . . the critical question is whether the witness provided the police with [an] honest or good faith belief of the facts." *Brice*, 220 F.3d at 238 (citing *King*, 142 S.E. at 361). Because Plantan asserts that the Cornerstone Defendants acted maliciously, or untruthfully, in their reporting, they are not, as they suggest, protected from civil liability for acting as a witness. *See id*; *King*, 142 S.E. 358 at 361 (distinguishing between the actions of a witness who acted in good faith and was thus shielded from civil liability, from those of a witness reporting with questionable truthfulness)).

As to the third factor to establish malicious prosecution, Plantan's plausible allegations that the *Cornerstone Defendants* acted with malice preclude a finding that *they* had probable cause to institute the prosecution against Plantan. Read favorably, Plantan states a malicious prosecution claim that the Cornerstone Defendants fabricated allegations of sexual abuse against him without input from S.P., meaning that the Cornerstone Defendants did not have any "facts and circumstances to raise the belief in a reasonable mind . . . that [Plantan was] guilty of [sexually abusing S.P.]" *See Bennett*, 492 Fed. App'x. at 324 (quoting *Ring*, 585 S.E.2d at 786).

As to the final and fourth factor, no party challenges that the Hanover County Circuit Court terminated the criminal prosecution in Plantan's favor. *See Bennett*, 492 Fed. App'x. at 316. In sum, because Plantan bears his burden to state in the Complaint each of the factors required to establish a malicious prosecution claim, the Court will deny the Motion to Dismiss the Malicious Prosecution Count against the Cornerstone Defendants (Count III.C).

### D.   Plantan Does Not Sufficiently Allege False Arrest in Count IV Against Payne or the Cornerstone Defendants Because Payne Had a Warrant for the Arrest

Next, Plantan brings a Virginia false arrest claim against Sergeant Payne, individually and officially, and the Cornerstone Defendants (Count IV.A and C). The allegations in the

Complaint do not sustain Plantan's False Arrest Claim, officially or individually,[25] against Payne (Count IV.A), nor do they sustain his Cornerstone Defendants False Arrest Claim (Count IV.C). This is true because, as to both allegations, Payne had a valid warrant to arrest Plantan.[26]

### 1.    Legal Standard:  False Arrest

In Virginia, false arrest, or false imprisonment,[27] is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *Jordan v. Shands*, 500 S.E.2d 215, 218 (Va. 1998) (quoting *W.T. Grant Co. v. Owens*, 141 S.E. 860, 865(Va. 1928); *see also Park v. Shiflett*, 250 F.3d 843, 852 (4th Cir. 2001) (quoting *Montgomery Ward & Co. v. Wickline*, 50 S.E.2d 387, 388–89 (Va. App. 1958)).  "In order to state a claim for false imprisonment, a plaintiff must allege that the process leading to the arrest was unlawful." *Montanile v. Botticelli*, No. 1:08cv716, 2008 WL 5101775, *4 (E.D. Va. Nov. 25, 2008) (citing *Cole v. Eckerd Corp.*, 54 Va. Cir. 269, 2000 WL 3359985, *2 (Va. Cir. Ct. 2000)).  Even if a law enforcement agent "procured" a warrant "without probable cause," an arrest will not create a cause of action for false imprisonment if the warrant was "regular and legal in form or regular on

---

[25] As previously discussed, *see* n.17, Plantan does not allege a theory of liability for a suit against Sergeant Payne in his official capacity.  In his Complaint, Plantan states only "labels and conclusions" declaring that he is entitled to relief against Payne in his official capacity, *Twombly*, 550 U.S. at 555,  without any "factual enhancement . . . to cross the line between possibility and plausibility of entitlement to relief," *Giacomelli*, 588 F.3d at 193  (quoting *Twombly*, 550 U.S. at 557).  The Court will therefore focus its analysis on the False Arrest Count brought against Payne in his individual capacity but will dismiss the count for both individual and official.

[26] The Court notes that in response to Defendant Smith's Motion for Judgment on the Pleadings on the False Arrest Count, Plantan concedes that the claim should be dismissed against Smith based on this same reasoning.  (ECF No. 35, at 1.)

[27] In Virginia, "[f]alse arrest is a species of false imprisonment; . . . the torts are analogous." *Montanile v. Botticelli*, No. 1:08cv716, 2008 WL 5101775, *4 (E.D. Va. Nov. 25, 2008) (citing *Motley v. Virginia Hardware & Mfg. Co.*, 287 F. Supp. 790, 792 (W.D. Va. 1968)).

its face." *Id.* at \*5 (citation omitted); *see also Motley v. Virginia Hardware & Mfg. Co.*, 287 F. Supp. 790, 792 (W.D. Va. 1968) ("The party . . . procuring the warrant would not be liable in an action for false imprisonment, even though the warrant was procured maliciously and without probable cause, though he would be liable in an action for malicious prosecution.").

In *Dechene v. Smallwood*, 311 S.E.2d 749 (Va. 1984), "the Supreme Court of Virginia made clear that a *law enforcement officer* may not be held liable for a false arrest if the officer acted in good faith and with probable cause."[28] *Ware v. James City Cnty, Va.*, 652 F. Supp. 2d 693, 712–13 (E.D. Va. 2009) (emphasis added) (quotation omitted); *see also Amisi v. Riverside Reg. Jail Auth.*, 555 F. Supp. 3d 244, 267–68 (E.D. Va. 2021). "To establish the defense, an officer need not allege and prove probable cause in the constitutional sense . . . Instead the officer must allege and prove (i) that he believed in good faith that the arrest was lawful and (ii) that his belief was reasonable." *Ware*, 652 F. Supp. 2d at 713 (quotation omitted).

"While false arrest and false imprisonment charges are usually filed against the arresting agent, '[c]ourts in Virginia (and neighboring states) have repeatedly permitted a plaintiff to maintain a false imprisonment claim against private-party defendants who did not themselves physically apprehend the plaintiff but rather requested that others do so.'" *Montanile*, 2008 WL 5101775, at \*4 (quoting *Kalantar v. Lufthansa German Airlines*, 402 F. Supp. 2d 130, 142 (D.D.C. 2005)). Individuals other than "the person actually restraining a plaintiff's liberty" can only be held liable for the restraint "when the arresting agent does not have a 'sufficient legal excuse' to make the arrest- for example, a warrant." *Id.* (quoting *Montgomery Ward*, 50 S.E.2d at 388).

---

[28] For non-law enforcement defendants, "false arrest differs from malicious prosecution in that good faith or probable cause cannot serve as a defense." *Montanile*, 2008 WL 5101775, at \*4.

### 2.     Payne Had a Warrant and a Reasonable, Good Faith Belief That He Lawfully Arrested Plantan

Plantan cannot succeed on the False Arrest Count against Payne (Count IV.A) despite

Plantan's claims that Sergeant Payne did not have probable cause to support his arrest. This is

true because Payne arrested Plantan pursuant to a warrant that was "regular on its face." *See*

*Montanile*, 2008 WL 5101775, at *4. Plantan admits that Payne secured a warrant for his arrest.

(ECF No. 1 ¶ 41.) The law clearly states that Payne, as the party procuring the warrant, "would

not be liable in an action for false imprisonment, even [if] the warrant was procured maliciously

and without probable cause." *Motley*, 287 F. Supp. at 792 (W.D. Va. 1968).

Further, the Court has determined that Payne "believed in good faith that the arrest was

lawful" and that "his belief was reasonable." *See Ware*, 652 F. Supp. 2d at 712–713. The Court

has already found, for the reasons stated in Payne's Malicious Prosecution   Count analysis in

Section III.C.2, that Sergeant Payne did not "maliciously" arrest Plantan, which means that

Payne did not have "any controlling motive *other than* a good faith desire to further the ends of

justice, enforce obedience to the criminal laws, suppress crime, or see that the guilty are

punished." *See Daniczek*, 156 F. Supp. 3d at 756.

The Court has also decided, for the reasons articulated in its Qualified Immunity Analysis

in Section III.B.2, that qualified immunity protects Payne's reliance on the facilitated

communication claims of sexual abuse because the law did not "'clearly establish[]' at the time"

any constitutional violation that may have occurred from his reliance. *See Sharpe*, 59 F.4th at

683 (quoting *Melgar*, 593 F.3d at 353). Because the right was not clearly established, Payne

objectively reasonably believed his reliance on the facilitated communication claims to seek

criminal charges would render the arrest of Plantan lawful.

31

Because Sergeant Payne acted pursuant to a valid warrant and acted in good faith and with the level of probable cause required for Virginia's false arrest claims, he cannot be held liable for False Arrest in either his official or individual capacity. *See Ware*, 652 F. Supp. 2d at 712–713 (citation omitted). The Court therefore will grant the Motion to Dismiss Plantan's False Arrest Count against Payne, both officially and individually (Count IV.A).

### 3. The Cornerstone Defendants Cannot Be Held Liable for False Arrest Because Payne Had a Warrant

Similarly, Plantan cannot maintain his Cornerstone Defendants False Arrest Count (Count IV.C) because Payne secured a warrant to effectuate Plantan's arrest.

While courts in this district have found that a plaintiff does not have to allege a defendant "personally arrested [the plaintiff] in order to state a claim for false arrest or false imprisonment," the Complaint does have to "allege that the arrest was made without a lawful warrant or other form of lawful process-that is, a warrant 'regular and legal in form or regular on its face.'" *Montanile*, 2008 WL 5101775, at *5 (quoting *Motley*, 287 F. Supp. at 792). As previously discussed, Plantan admits that Payne secured a warrant for his arrest, (ECF No. 1 ¶ 41), and does not allege that the warrant was not "regular on its face," *see Montanile*, 2008 WL 5101775, at *5. This is true even where, as here, the plaintiff "allege[s] that [he or] she was falsely arrested based on wrongful information volunteered by [a third party] to procure an arrest warrant." *See id*.

Therefore, the Court will grant the Motion to Dismiss Plantan's False Arrest Count against the Cornerstone Defendants (Count IV.C).

**E.** **Plantan Does Not State a Claim for Gross Negligence in Count VII Because No Cause of Action Exists for Negligence in Police Investigations and No Duty Exists Between Health Care Providers and Parents of Patients**

Finally, Plantan brings a Virginia state law gross negligence claim against Sergeant Payne and the Cornerstone Defendants (Count VII). The allegations in the Complaint do not sustain Plantan's Gross Negligence Count against Payne[29] because no cause of action exists in Virginia for negligence in police investigations (Count VII.A). In addition, Plantan cannot succeed on his Cornerstone Defendants Gross Negligence Count because the Cornerstone Defendants owed a duty only to S.P. (Count VII.C). Thus, the Court will dismiss Count VII.A against Sergeant Payne and VII.C against the Cornerstone Defendants.

**1.** **Legal Standard: Gross Negligence**

Under Virginia law, "[g]ross negligence is 'a degree of negligence showing indifference to another and an utter disregard of prudence that amounts to a complete neglect of the safety of such other person.'" *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016) (quoting *Cowan v. Hospice Support Care, Inc.*, 603 S.E.2d 916, 918 (Va. 2004)). "It is a heedless and palpable violation of legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of even scant care," and it "requires a degree of negligence that would shock fair-minded persons, although demonstrating something less than willful recklessness." *Id.* (quoting *Chapman v. City of Virginia Beach*, 475 S.E.2d 798, 800–01 (Va. 1996); *Cowan*, 603 S.E.2d at 918).

---

[29] Unlike his allegations in Counts I.A and IV.A, Plantan's Gross Negligence Count (Count VII.A) does not specifically say he is suing Payne both in his individual and official capacity.

"The finding of a legal duty is a prerequisite to a finding of negligence." *Quisenberry v. Huntington Ingalls, Inc.*, 818 S.E.2d 805, 809 (Va. 2018) (internal citations omitted). "Without a legal duty there can be no cause of action for an injury." *Id.*

"Ordinarily, the question [of] whether gross negligence has been established is a matter of fact to be decided by a jury. Nevertheless, when persons of reasonable minds could not differ upon the conclusion that such negligence has not been established, it is the court's duty to so rule." *Id.* (quoting *Frazier v. City of Norfolk*, 362 S.E.2d 688, 691 (Va. 1987)). Thus, at the motion to dismiss stage, the inquiry is: Could reasonable minds differ as to whether the defendant acted in a grossly negligent manner? If reasonable minds could only conclude that the defendant's conduct did not amount to gross negligence, then the court must grant the motion to dismiss.

### 2. Virginia Does Not Recognize a Gross Negligence Cause of Action for Payne's Police Investigation

Even read favorably, Plantan is unable to maintain his Gross Negligence Count against Payne because Virginia does not recognize a cause of action for gross negligence in police investigations (Count VII.A).

"Virginia law recognizes no [gross negligence] cause of action against police officers for conducting investigations." *Durham v. Horner*, 759 F. Supp. 2d 810, 815 (W.D. Va. 2010); *see also Boyce v. Bennett*, 2:14cv249, 2015 WL 6873547, at *8 (E.D. Va. Nov. 9, 2015); *Lewis v. McDorman*, 820 F. Supp. 1001, 1008 (W.D. Va. 1992) (sustaining a motion to dismiss a willful and wanton negligence claim because the plaintiff "cited no authority for the existence, under Virginia law, of a duty upon police officers to exercise reasonable care in conducting investigations or in playing a role in prosecutions[,] . . . [In] the court's view . . . no such duty

exists[,] and Virginia simply has never recognized a cause of action based on negligent

investigations or prosecution"), *aff'd* 28 F.3d 1210 (4th Cir. 1994).

Plantan alleges gross negligence against Payne because he "relied on the statements of

third parties as to S.P.'s allegations and took them at face-value without any due diligence or

material investigation in the merits of facilitated communication." (ECF No. 1 ¶ 132.) This

allegation directly challenges the manner in which Payne conducted his investigation into the

sexual abuse accusations against Plantan.  Because no cause of action for gross negligence of a

police officer's investigation can be brought in Virginia, the Court will grant the motion to

dismiss Plantan's Gross Negligence Count against Payne (Count VII.A).

### 3.    The Cornerstone Defendants Did Not Owe Plantan a Duty of Care

Finally, as to Count VII.C, Plantan is unable to maintain his Gross Negligence Count

against the Cornerstone Defendants because, under Virginia law, they did not owe *Plantan* "a

duty to ensure that their practices were legitimate and credible and that the assertions they made

on behalf of S.P. were true and accurate representations of what she actually communicated."

(ECF No. 1 ¶ 163.)  Any legal duty owed by the Cornerstone Defendants as health care providers

belonged to S.P., not to Plantan.

In furtherance of a gross negligence claim against the Cornerstone Defendants, Plantan

alleges that they negligently performed their role[30] as occupational therapists hired to "'facilitate'

---

[30] As the Court discussed earlier, read favorably, Plantan's complaint alleges that S.P. does not speak through facilitated communication, meaning that the Cornerstone Defendants created the accusations of sexual abuse against Plantan without input from S.P.  This reading of Plantan's complaint could support a claim for an intentional tort, such as malicious prosecution, based on the Cornerstone Defendants' intentional fabrication of abuse claims.

However, this reading of Plantan's complaint does not comport with a claim for gross negligence, which is a claim that the Cornerstone Defendants "complete[ly] neglected" a duty of care they owed. *Cowan*, 603 S.E.2d at 918–19 (citations omitted).  Therefore, the Court interprets Plantan's Gross Negligence Count (Count VII.C) against the Cornerstone Defendants as a count in the alternative to his claims of malicious prosecution and false arrest.

or effectively 'speak for' S.P." (ECF No. 1 ¶ 162.)  Plantan states that in this role, the

Cornerstone Defendants "had a duty to ensure that their practices were legitimate and credible

and that the assertions they made on behalf of S.P. were true and accurate representations of

what she actually communicated."  (ECF No. 1 ¶ 163.)  Because Plantan's negligence claims

stem from the Cornerstone Defendants' provision of health care services,[31] his negligence claim

falls under the aegis of medical malpractice, which is governed by the Virginia Medical

Malpractice Act.[32]  *See Gedrich v. Fairfax Cnty. Dept. of Family Servs.*, 282 F. Supp. 2d 439,

477 (E.D. Va. 2003) ("[A]ll tort claims based on the provision of health care services against

---

[31] The practices that the Cornerstone Defendants utilize in their provision of services as occupational therapists is squarely a "component to the delivery of health care services," and therefore within the contemplation of the Virginia Medical Malpractice Act. *See Peterson v. Fairfax Hosp. Sys., Inc.*, 31 Va. Cir. 50, 1993 WL 946011, *6 (Va Cir. Ct. 1993) (the "crucial question becomes whether the [p]laintiff's allegations, as a matter of law, demonstrate that [the d]efendants tortious conduct was based on health care or professional services rendered." (citation omitted)).

    If Plantan intends the alleged duty of the Cornerstone Defendants to ensure "that the assertions they made on behalf of S.P. were true and accurate representations of what she actually communicated," to be based on some other contractual or fiduciary duty outside of the provision of health care services, he does not sufficiently state so in his Complaint and the Court cannot, even read favorably, infer such a claim. (ECF No. 1 ¶ 163.)

[32] Plantan asserts that because the Cornerstone Defendants are not physicians, they do not qualify as health care providers as defined by the Virginia Medical Malpractice Act. (ECF No. 27, at 6.)  The Cornerstone Defendants respond that occupational therapists are health care providers and submit that the occupational therapy profession is "regulated by the Virginia Department of Health, which falls under the Board of Medicine, and requires a license to practice." (ECF No. 29, at 6.)

    Virginia's Medical Malpractice Act defines "health care provider" as "a person, corporation, facility or institution licensed by this Commonwealth to provide health care or professional services as a physician or hospital, dentist, pharmacist, registered nurse or licensed practical nurse . . . chiropractor, physical therapist, physical therapy assistant, clinical psychologist, clinical social worker, professional counselor . . ." Va. Code § 8.01-581.1.  In addition, courts in this district have previously treated occupational therapists as health care providers. *See LivinRite, Inc. v. Azar*, 386 F.Supp.3d 644 (E.D. Va. 2019) (analyzing Medicare coverage for occupational therapy); *Villarreal v. Dixon*, 3:19CV447, 2021 WL 2689840 (E.D. Va. 2021) (analyzing a medical malpractice claim against occupational therapists).

health care providers are considered malpractice claims and are governed by the Virginia Medical Malpractice Act.").

However, in medical malpractice claims, a healthcare providers' "dut[ies] arise[] only upon the creation of a [provider]-patient relationship; that relationship springs from a consensual transaction, a contract, express or implied, general or special." *Fruiterman v. Granata*, 668 S.E.2d 127, 135 (Va. 2008) (citing *Lysons v. Grether*, 239 S.E.2d 103, 105 (Va. 1977)). Although Plantan states that the Cornerstone Defendants "maintain a duty to . . . Plantan, as the father of [their patient], to forego the repetition of otherwise unverified statements concerning criminal allegations purportedly made by S.P. via a faulty method of communication," (ECF No. 1 ¶ 158), this is not supported by the law. *See e.g. Gray v. INOVA Health Care Servs.*, 514 S.E.2d 355 (Va. 1999) (finding a physician not liable for negligent infliction of emotional distress on a mother because the physician only owed the daughter a duty as the patient); *McDonald v. Hoard*, 48 Va. Cir. 421, 1999 WL 33726994, *7 (Va. Cir. Ct. 1999) (finding in review of a negligent infliction of emotional distress claim that the doctor "had a duty to exercise reasonable ca[r]e, but that duty was to [the child patient], rather than her mother."). The Cornerstone Defendants' provider-patient relationship existed solely with S.P. and they cannot be found liable for a medical malpractice claim brought by Plantan.

Because the Court cannot find that the Cornerstone Defendants owed Plantan a duty of care, the Court will grant the Motion to Dismiss Plantan's Gross Negligence Count against the Cornerstone Defendants (Count VII.C).

## IV.  Conclusion

For the foregoing reasons, the Court granted the Hanover Defendants' Motion to Dismiss in its entirety and the Cornerstone Defendants' Motion to Dismiss in part.  In its March 31, 2023 Order, the Court dismissed Counts I, II, II, IV, and VII against the Hanover County Sheriff's Department with prejudice, Counts I, II, III, IV, and VII against Sergeant Troy Payne without prejudice, and Counts IV and VII against both Cornerstone and Wendy Atkinson without prejudice.  (ECF No. 39.)

The Court will issue an Amended Order.  The Order issued on March 31, 2023, correctly described the Counts dismissed and the parts of the Motions to Dismiss that were denied.  The Court describes these dismissals in greater detail in the Amended Order to more accurately follow the structure of this Memorandum Opinion.  The Court dismissed all Counts against the Hanover County Sheriff's Department with prejudice (Counts I.B, II.B, III.B, IV.B, and VII.B).  The Court dismissed all Counts against Sergeant Payne without prejudice (Counts I.A, II.A, III.A, IV.A, and VII.A).  As to the Cornerstone Defendants, the Court dismissed Counts IV.C and VII.C.  The Court denied the Cornerstone Defendants' Motion to Dismiss in part, so Count III.C remains against Cornerstone and Atkinson.

Date: 4-18-2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge