IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

KEVIN PLANTAN,

        Plaintiff,

v.

                                           Civil Action No. 3:22cv407

KELLY SMITH, *et al.*,

        Defendants.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Kelly Smith's Motion for Judgment on the Pleadings (the "Motion"). (ECF No. 33.) Plaintiff Kevin Plantan brings this action against Smith, Cornerstone Therapy Associates, LLC ("Cornerstone") and Cornerstone's employee, Wendy Atkinson.[1]

---

[1] Plantan originally named eight additional parties who have since been dismissed. They include: two Cornerstone employees, Olivia Mastrangolia and Danielle Whitlow; the Hanover County Department of Social Services (the "HCDSS"); Ahnaia White, in her individual capacity and in her official capacity as an agent of the HCDSS; Devon Parham, in his individual capacity and in his official capacity as an agent of the HCDSS; the Hanover County Sheriff's Department (the "HCSD"); and, Sergeant Troy Payne, in his individual capacity and in his official capacity as an agent of the HCSD.

On August 17, 2022, Plantan filed a Motion to Voluntarily Dismiss Mastrangolia and Whitlow, which the Court granted. (ECF Nos. 25, 26.) On September 21, 2022, Plantan filed a Motion to Voluntarily Dismiss the HCDSS, White, and Parham, which the Court also granted. (ECF Nos. 31, 32.)

On August 12, 2022, the HCSD and Sergeant Troy Payne filed a Motion to Dismiss Plantan's Complaint. (ECF No. 23.) On March 31, 2023, the Court granted the Motion to Dismiss and dismissed the HCSD and Sergeant Troy Payne from this action. (ECF No. 39.)

Cornerstone and Atkinson similarly filed a Motion to Dismiss. (ECF No. 21.) On March 31, 2023, the Court dismissed two of the three counts brought against Cornerstone and Atkinson. (ECF No. 39.) In its April 18, 2023 Opinion and more detailed and itemized Amended Order, the Court explained its dismissal of all but the Malicious Prosecution Count (Count III.C) against Cornerstone and Atkinson. (ECF Nos. 40, 41.)

Against Smith, Plantan brings Virginia state law claims of malicious prosecution (Count III.D), false arrest (Count IV.D), intentional infliction of emotional distress ("IIED") (Count V), and abuse of process (Count VI).  (ECF No. 1, at 13–20.)

Smith filed her Answer and a Motion to Dismiss on the same day.  (ECF Nos. 13, 14.) Smith's Answer came before the Motion to Dismiss, so the Court denied the Motion to Dismiss under Federal Rule of Civil Procedure 12(b).  (ECF No. 20.)  Later, Smith properly filed her Motion for Judgment on the Pleadings.  (ECF No. 33.)  Plantan responded and Smith replied. (ECF Nos. 35, 37.)

These matters are ripe for adjudication.  The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process.  The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.[2]  For the reasons that follow, the Court will grant the Motion for Judgment on the Pleadings in part.  The Court will grant the Motion as to the False Arrest Count (Count IV.D) and the Abuse of Process Count (Count VI).  The Court will deny the Motion as to the other two counts:  the Malicious Prosecution Count (Count III.D) and the IIED Count (Count V).  (Counts III.D, V, and VI).[3]

_____

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331(a).  Plantan's Complaint alleges that the HCSD and Sergeant Troy Payne, in his individual and official capacity, violated his constitutional rights as protected by 42 U.S.C. § 1983 ("Section 1983") and the Fourth and Fourteenth Amendments of the United States Constitution.  (ECF No. 1, at 10–12.)  Although all counts against the HCSD and Payne have been dismissed, the Court exercises its discretion to invoke supplemental jurisdiction over Plantan's state law claims because the constitutional claims against Payne were dismissed without prejudice.  28 U.S.C. § 1367(a).

[3] As detailed above, the Court spoke to other Motions to Dismiss in its earlier Memorandum Opinion and Amended Order.  (ECF Nos. 40, 41.)  As a result of that decision, the sole Count remaining against Cornerstone and Atkinson is the Malicious Prosecution Count (Count III.C).

# I.  Factual and Procedural Background

## A.  Factual Background[4]

Plantan's claims stem from his arrest and subsequent detention based on allegations that he sexually assaulted his minor daughter, S.P.  (ECF No. 1 ¶¶ 38–71.)  Kevin Plantan and Kelly Smith married in 2001.  (ECF No. 1 ¶ 16.)  The couple's only child, S.P., who was fifteen years old at the time of the Complaint's filing, began to show "signs of cognitive decline or regressive tendencies in her learning and development" at two years old.  (ECF No. 1 ¶¶ 17–18.)  Around this age, S.P. "became nonverbal" and "had severe limitations in her ability to communicate." (ECF No. 1 ¶ 21.)  At three years old, clinicians diagnosed S.P. with "regressive autism" and

---

[4] For purposes of the Rule 12(c) Motion for Judgment on the Pleadings, the Court will accept the well-pleaded factual allegations in Plantan's Complaint, (ECF No. 1), as true and draw all reasonable inferences in favor of Plantan.  *See* 5C Charles Alan Wright and Arthur R. Miller,  Federal Practice and Procedure § 1368 (3d ed. 2023) ("It is axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false.")  Similar to a Rule 12(b)(6) motion, the Court must view all "the inferences to be drawn [from the facts] in the light most favorable to the nonmoving party."  *Id.* (citing cases).

"On a motion for judgment on the pleadings, the court considers the pleadings, which consist of the complaint, the answer, and any written instruments attached to those filings, as well as any documents that are integral to the complaint and authentic." *Penn-Am. Ins. Co. v. White Pines, Inc.*, 476 F. Supp. 3d 354, 360 (E.D. Va. 2020) (citation omitted); *see also Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013). "[F]actual allegations in the Answer are taken as true to the extent they have not been denied or do not conflict with the Complaint." *Burke v. Nationstar Mortgage, LLC*, No. 3:14cv837, 2016 WL 4231705, at *1 n.3 (E.D. Va. Aug. 9, 2016) (citation omitted).

In her Motion for Judgment on the Pleadings, Smith references documents from Plantan's criminal case in front of the Hanover County Circuit Court. (ECF Nos. 24-1–24-12.) However, the records were attached to the filing of the HSCD and Sergeant Troy Payne's Motion to Dismiss, not to Plantan's Complaint or Smith's Answer.  In addition, the Court declined to consider the records in its review of the HSCD and Payne's Motion to Dismiss because Plantan had not agreed to their authenticity. (ECF No. 40, at 12.)  Therefore, the Court will not consider the records in its review of Smith's Motion for Judgment on the Pleadings.

"severe dyspraxia, a motor-function disorder that severely limits, alters, and impacts her ability to control her own physical movements." (ECF No. 1 ¶¶ 19–20.)

In 2010, Plantan and Smith divorced. (ECF No. 1 ¶ 16.) Smith eventually re-married, and S.P. lived in Hanover County, Virginia, with Smith, her new husband, and her husband's two children. (ECF No. 1 ¶ 22.) Plantan continued to live in Virginia. (ECF No. 1 ¶ 23.) He had scheduled visits with S.P. (ECF No. 1 ¶ 23.)

In 2014, at approximately seven years old, S.P. began using "a 'letter board' as a means of trying to conduct a practice known as 'facilitated communication.'" (ECF No. 1 ¶ 24.) Facilitated communication is a "technique" for communication that "involves the purported speaker . . . pointing to individual letters on a board via assistance of another individual, or 'facilitator,' as a means of spelling individual words." (ECF No. 1 ¶ 25.) The facilitator "offers support [to the speaker] via physical and verbal prompts," including "the physical touching and placing of the speaker's fingers on the relevant letters." (ECF No. 1 ¶ 26.)

Plantan asserts that facilitated communication is "a disproven, controversial, nonscientific, unaccepted, and unrecognized practice insofar as it does not involve reliable or credible communication with those suffering from nonverbal autism." (ECF No. 1 ¶ 29.) In 2016, Hanover County Public Schools informed Smith that they would not accept S.P.'s use of facilitated communication as a "legitimate practice." (ECF No. 1 ¶ 27.) "[C]ourts throughout the United States [have] rejected the practice [for use in] witness testimony" and "the American Speech and Hearing Association has taken a position completely rejecting" the practice. (ECF No. 1 ¶ 32.) S.P. thus discontinued her use of facilitated communication in 2016. (ECF No. 1 ¶ 27.) Plantan asserts that Smith knew, or should have known, "that facilitated communication

was not recognized as a legitimate practice" and that any information communicated through the practice "was not credible." (ECF No. 1 ¶¶ 101, 100.)

In 2019, Plantan "relocated to Florida," but "maintain[ed] scheduled visits with S.P." in Virginia. (ECF No. 1 ¶ 23.) In the same year, Smith "hired . . . Cornerstone and specifically . . . Wendy Atkinson, an [o]ccupational [t]herapist and agent of Cornerstone," to introduce a new form of facilitated communication to S.P. (ECF No. 1 ¶¶ 34–35.) The new form of facilitated communication "involved the introduction of a keyboard or keypad on an iPad tablet device[,] rather than using the physical letter board that was previously rejected by Hanover [County] Public Schools." (ECF No. 1 ¶ 36.) However, "[a]fter reviewing the iPad communication and assertions from . . . Atkinson concerning her work with S.P. . . . , Hanover County Public Schools continued to reject [the] use [of facilitated communication] for the purposes of S.P.'s graded assignments or assessments." (ECF No. 1 ¶ 37.) In her discussions with Hanover County Public Schools, Atkinson admitted that she knew facilitated communication had gotten a "bad rap." (ECF No. 1 ¶ 58.)

On independent occasions, three Cornerstone employees, including Atkinson, "purportedly facilitated S.P. as she used an iPad or other device as a means of making" allegations that "Plantan sexually abused her in 2013 and 2016, [at] six and nine years old respectively." (ECF No. 1 ¶¶ 38–39.) Each Cornerstone facilitator "reported these purported allegations." (ECF No. 1 ¶ 40.) Plantan also alleges that "Smith reported these unsubstantiated claims by S.P. to law enforcement." (ECF No. 1 ¶ 115.) "Based solely on these allegations that purportedly came from S.P.'s use of facilitated communication, and without any other . . . evidence or . . . corroboration, [Sergeant] Payne . . . obtained felony criminal charges and arrest warrants for . . . Plantan on January 8, 2021." (ECF No. 1 ¶ 41.) Payne charged Plantan with

"two counts of rape and two counts of sodomy." (ECF No. 1 ¶ 41.) At the time Payne sought

these charges against Plantan, "Virginia had not yet addressed the legality of allowing child

testimony through the use of technology as a means of facilitated communication." (ECF No. 1

¶ 56.)

On January 8, 2021, Smith provided information to Payne, including the vehicle she

believed Plantan had rented, regarding a visit Plantan had scheduled with S.P. at Courthouse

Park in Hanover County. (ECF No. 1 ¶¶ 42–43.) The next day, January 9, 2021, at

approximately 10:00 a.m., Plantan arrived at the park for his scheduled visit when "deputies

from the [HCSD], acting pursuant to . . . Payne's directive, approached . . . Plantan on foot and

asked for [his] identification." (ECF No. 1 ¶ 44.) At 10:02 a.m., the deputies "arrested . . .

Plantan, searched him incident to arrest, searched [and towed] his van, . . . and transported him to

the Sheriff's Department." (ECF No. 1 ¶ 45.)

At the Sheriff's Department, Payne and a Hanover County Investigator read Plantan his

so-called *Miranda* warnings and, after Plantan waived his right to remain silent, questioned him.

(ECF No. 1 ¶¶ 46–47.) During the interrogation, "Payne accused . . . Plantan of raping S.P. and

alleged . . . Plantan had [his] friend . . . record the incident with his phone." (ECF No. 1 ¶ 48.)

Payne also accused Plantan "of meeting with an underage girl in Alabama via a dating app or

other online dating service." (ECF No. 1 ¶ 49.) Plantan denied these allegations during the

interrogation, "repeatedly request[ing] a polygraph test as a means of corroborating [his

innocence]." (ECF No. 1 ¶ 50.) Plantan also "consented to the search of his phone . . .

and . . . other electronic storage devices as a means of negating the claims made against him."

(ECF No. 1 ¶ 51.) During the interview, Plantan informed Payne "that Hanover County Public

Schools rejected or did not accept . . . facilitated communication as a practice by which credit

could be awarded." (ECF No. 1 ¶ 57.)  At the conclusion of the interview, Hanover County authorities placed Plantan in the Pamunkey Regional Jail. (ECF No. 1 ¶ 52.)

At Plantan's bond hearing in the Hanover Juvenile and Domestic Relations District Court, "Atkinson testified to her facilitated communication with S.P." (ECF No. 1 ¶ 59.)  Based on this testimony, the [Hanover Juvenile and Domestic Relations District Court certified the] charges [against Plantan] . . .to the grand jury." (ECF No. 1 ¶ 59.)  During the same hearing, the Assistant Commonwealth's Attorney for Hanover County argued for detention because Plantan had a passport (without mentioning that it was expired), because he was under investigation for rape in three counties other than Henrico (which he was not), and because S.P.'s regressive autism developed at age two because Plantan was raping her (without proper basis for that allegation). (ECF No. 1 ¶¶ 53, 54.)  The Hanover Juvenile and Domestic Relations District Court denied Plantan bond, so he remained in the Pamunkey Regional Jail. (ECF No. 1 ¶ 52.)

On June 15, 2021, the Hanover County Circuit Court grand jury indicted Plantan "on two of the four original charges for which [Hanover County authorities] arrested [him]," one count of rape and one count of sodomy in 2016. (ECF No. 1 ¶ 60.)

At a pretrial hearing on October 19, 2021, "Plantan's defense presented two well-established, internationally renowned speech pathology professors," whom the Hanover County Circuit Court judge recognized as expert witnesses. (ECF No. 1 ¶¶ 61–62.)  The expert witnesses testified that a "lack of validity [exists] underlying facilitated communication and the methods used with S.P." (ECF No. 1 ¶ 61.)  "As a result of this hearing, [the Hanover County Circuit Court judge] ordered a 'double blind' test [for] . . . S.P. as a means of determining the validity and credibility of the facilitated communication at issue." (ECF No. 1 ¶ 63.)

On November 5, 2021, Smith "act[ing] through her agent, an attorney, . . . 'offered' . . . Plantan's attorney a compromise . . . by suggesting that . . . Smith would drop the charges, or request for the criminal charges at issue to be dismissed, should . . . Plantan agree to never see S.P. again." (ECF No. 1 ¶ 64.) Plantan's attorney told the Hanover County Circuit Court judge that this "offer" demonstrated that Smith "attempt[ed] to leverage the criminal case against . . . Plantan as a means of manipulating the custody and visitation matters that remained ongoing [between Smith and Plantan]." (ECF No. 1 ¶ 65.) Based on this representation, the Hanover County Circuit Court judge granted Plantan "release from pretrial detention and admonished . . . Smith's attempts to manipulate the judicial process." (ECF No. 1 ¶ 66.) The Hanover County authorities released Plantan from the Pamunkey Regional Jail on November 5, 2021. (ECF No. 1 ¶ 52.)

Although Smith "initially agreed to . . . the 'double blind' test, . . . [on November 11, 2021,] Smith . . . informed the [Hanover County] Commonwealth's Attorney's [O]ffice that she would not permit S.P. [to participate in] the court[-]ordered evaluation of facilitated communication." (ECF No. 1 ¶ 67.) In an email informing the Hanover County Commonwealth's Attorney's Office that she would not allow the "double blind" test, Smith added that she would "contest[] . . . Plantan's attempt to expunge th[e] case from his record and [that] she wanted . . . Plantan to be placed or remain on a sexual offender registry 'to increase the chance of keeping other children safe.'" (ECF No. 1 ¶¶ 69–70.)

Because Smith would not allow S.P. to "engage in the requisite testing to evaluate the facilitated communication at issue, the [Hanover County] Commonwealth['s Attorney] moved to dismiss the charges [against Plantan,] and the [Hanover County Circuit Court] entered an order dismissing the case on November 23, 2021." (ECF No. 1 ¶ 71.)

As a result of his detention, criminal prosecution, and the curtailing of his parental and visitation rights with S.P., Plantan states that he has suffered "severe emotional distress, [which] include[s] but [is] not limited to[,] severe anxiety, paranoia, depression, embarrassment, and psychological trauma." (ECF No. 1 ¶¶ 120–121.)

## B.    Procedural Background

Plantan brings seven Counts in his Complaint, four of which apply to Smith:[5]

**Count III.D:**  Malicious Prosecution, in violation of Virginia common law.

Smith "maliciously initiated and sought to maintain the criminal proceedings [against Plantan] to terminate [his] parental rights." (ECF No. 1 ¶ 89.) ("Malicious Prosecution Count.")

**Count IV.D:**  False Arrest, in violation of Virginia common law.

Smith "intentionally inflicted" Plantan's unlawful arrest and confinement "via the use and hire of [the Cornerstone Defendants who] intentionally supplied serious criminal allegations concerning . . . Plantan to [the authorities] with the knowledge and intent that such communications would result in" Plantan's arrest. (ECF No. 1 ¶ 110.) ("False Arrest Count.")

**Count V:**  Intentional Infliction of Emotional Distress, in violation of Virginia common law.

Smith "reported the[] unsubstantiated claims by S.P. to law enforcement . . . as a means of manipulating the judicial process concerning custody and visitation." Smith's "use of facilitated communication for S.P. and her reporting of the purported claims from S.P. against . . . Plantan [were meant] to intentionally injure . . . Plantan[] in many fashions, including psychological damage, and he has suffered as a result." (ECF No. 1 ¶¶ 115, 117, 122.) ("IIED Count.")

**Count VI:**  Abuse of Process, in violation of Virginia common law.

Smith "abused and manipulated the legal process" through her "use and reliance on facilitated communication as a means of advancing the[] allegations against . . . Plantan" to "cause vexation, trouble, embarrassment, and damage

_____

[5] As noted earlier, the Court will not address the counts brought against the dismissed defendants (the HCSD and Sergeant Payne) or the remaining defendants (Cornerstone and Atkinson).

9

to . . . Plantan's standing in his dispute for custody and visitation with S.P." (ECF No. 1 ¶¶ 124, 126.) ("Abuse of Process Count.")

Smith filed her Answer and a Motion to Dismiss on the same day. (ECF Nos. 13, 14.) Smith's Answer came before the Motion to Dismiss, so the Court denied the Motion to Dismiss under Federal Rule of Civil Procedure 12(b). (ECF No. 20.) Later, Smith properly filed her Motion for Judgment on the Pleadings. (ECF No. 33.) Plantan responded, and Smith replied. (ECF Nos. 35, 37.)

For the following reasons, the Court will grant Smith's Motion for Judgment on the Pleadings in part. The Court will grant the Motion as to the False Arrest Count (Count IV.D) and the Abuse of Process Count (Count VI). The Court will deny the Motion as to the other two counts: the Malicious Prosecution Count (Count III.D) and the IIED Count (Count V).

## II. Standard of Review: Motion for Judgment on the Pleadings, Rule 12(c)

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "A motion for judgment on the pleadings under Rule 12(c) is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013) (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). "A Rule 12(c) motion for judgment on the pleadings therefore is also analyzed for compliance with the Supreme Court's holdings in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)." *Trs. of Columbia Univ. in City of New York v. Symantec Corp.*, 425 F. Supp. 3d 601, 607 (E.D. Va. 2019) (citations omitted).

"It is axiomatic . . . that for purposes of the court's consideration of the Rule 12(c) motion, all of the well pleaded factual allegations in the adversary's pleadings are assumed to be true and all contravening assertions in the movant's pleadings are taken to be false." 5C Charles

Alan Wright & Arthur R. Miller., Federal Practice and Procedure § 1368 (3d ed. 2023) (citing cases). Similar to a Rule 12(b)(6) motion, the Court must view all "the inferences to be drawn [from the facts] in the light most favorable to the nonmoving party." *Id.* "To survive a motion for judgment on the pleadings, a pleading need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Sum of Three Hundred Nine Million Five Hundred Thousand Dollars*, 85 F. Supp. 3d at 115 (citing *Twombly*, 550 U.S. at 555) (internal quotation marks omitted).

### III. Analysis

Smith moves for judgment in her favor on all Counts against her in Plantan's Complaint.

First, because Plantan plausibly alleges that Smith acted maliciously in her reporting of the allegations purportedly made by S.P., the Court will deny the Motion for Judgment on the Pleadings with respect to the Malicious Prosecution Count brought against Smith (Count III.D).

As to the False Arrest Count brought against Smith (Count IV.D), Plantan correctly concedes that the Court should rule in Smith's favor. (ECF No. 35, at 1.) Therefore, the Court will grant the Motion for Judgment on the Pleadings as to Count IV.D.

Next, because Plantan sufficiently alleges that Smith's conduct was outrageous and intolerable, the Court will deny the Motion for Judgment on the Pleadings with respect to the IIED Count brought against Smith (Count V).

Finally, because Plantan does not specify a legal process abused by Smith, the Court will grant the Motion for Judgment on the Pleadings as to the Abuse of Process Count brought against Smith (Count VI).

### A.    Plantan States a Claim for Malicious Prosecution Against Smith

Plantan's first state law claim against Smith alleges malicious prosecution (Count III.D).
Based on a generous reading afforded to Plantan's Complaint on a motion for judgment on the
pleadings, Plantan sufficiently alleges a prosecution maliciously instituted by Smith.  Thus, the
Court will deny the Motion for Judgment on the Pleadings as to the Malicious Prosecution Count
against Smith (Count III.D).

### 1.    Legal Standard:  Malicious Prosecution

To state a claim for malicious prosecution under Virginia law, a plaintiff has the burden
to prove that "the prosecution was (1) malicious, (2) instituted by or with the cooperation of the
defendant, (3) without probable cause, and (4) terminated in a manner not unfavorable to the
plaintiff." *Bennett v. R & L Carriers Shared Servs., LLC*, 492 Fed. App'x. 315, 316 (4th Cir.
2012) (quoting *Reilly v. Shepherd*, 643 S.E.2d 216, 218 (Va. 2007)).

"In Virginia, 'malice' means 'any controlling motive other than a good faith desire to
further the ends of justice, enforce obedience to the criminal laws, suppress crime, or see that the
guilty are punished.'" *Daniczek v. Spencer*, 156 F. Supp. 3d 739, 756 (E.D. Va. 2016) (quoting
*Hudson v. Lanier*, 497 S.E.2d 471, 473 (Va. 1998)).  "[T]he fact that [a malicious prosecution
plaintiff does] not label and identify explicitly an alleged improper motive . . . is of no
consequence.  The Court is not aware of any authority that requires otherwise." *Id.* (quoting
*Bennett v. R & L Carriers Shared Servs., LLC*, 744 F. Supp. 2d 494, 521–24 (E.D. Va. 2010)
*aff'd*, 492 Fed. App'x. 315 (second and third alteration in original).

To determine that the prosecution was "instituted by or with the cooperation of the
defendant, . . . the Court must ascertain whether a defendant affirmatively, actively, and
voluntarily took steps to instigate or to participate in the arrest of the [plaintiff] and whether the

defendant exercised some level of control over the decision to have the plaintiff arrested." *Id.*
at 763 (quoting *Bennett*, 744 F. Supp. 2d at 511–12) (internal quotation marks omitted).  While
"a witness who provides the police with incorrect information during a criminal investigation
[does not] ipso facto 'institute[]' or 'procure[]' the prosecution if he provides that information
unequivocally[,] . . . the critical question is whether the witness provided the police with his
honest or good faith belief of the facts." *Brice v. Nkaru*, 220 F.3d 233, 238 (4th Cir. 2000)
(citing *King v. Martin*, 142 S.E. 358, 361 (Va. 1928)); *see also King*, 142 S.E. at 361
(distinguishing between the actions of a witness who acted in good faith and was thus shielded
from civil liability, from those of a witness reporting with questionable truthfulness).

"In Virginia, in the context of a malicious prosecution action, probable cause is defined
as 'knowledge of such facts and circumstances to raise the belief in a reasonable mind, acting on
those facts and circumstances, that the plaintiff is guilty of the crime of which he is suspected."
*Bennett*, 492 Fed. App'x. at 324 (quoting *Andrews v. Ring*, 585 S.E.2d 780, 786 (Va. 2003)); *see
also Ring*, 585 S.E.2d at 786 (holding that the relevant inquiry is whether the non-arresting
defendants had probable cause to believe the plaintiff committed a crime *at the time they
instituted the prosecution* by expressing their wish to press charges to a police officer).

### 2.  Plantan Plausibly Alleges that Smith Acted Maliciously

The allegations in Plantan's Complaint suffice to satisfy the elements of the Virginia
malicious prosecution analysis as to Smith.  Therefore, the Court will deny the Motion for
Judgment on the Pleadings as to the Malicious Prosecution Count against Smith (Count III.D).

As to the first factor needed to properly bring a malicious prosecution claim, a favorable
reading of Plantan's complaint provides sufficient allegations that Smith reported the alleged
claims of sexual abuse against Plantan with malice.  *See Bennett*, 492 Fed. App'x. at 316.

Plantan's Complaint describes facilitated communication as a "technique" that "involves the purported speaker . . . pointing to individual letters on a board via assistance of another individual, or a 'facilitator,' as a means of spelling individual words." (ECF No. 1 ¶ 25.) Plantan asserts that facilitated communication is "a disproven, controversial, nonscientific, unaccepted, and unrecognized practice insofar as it does not involve reliable or credible communication with those suffering from nonverbal autism." (ECF No. 1 ¶ 29.) In the light most favorable to Plantan, Plantan claims that S.P. does not speak through facilitated communication at all. Plantan also alleges that Smith knew that facilitated communication was not a credible means of communication for S.P. (ECF No. 1 ¶¶ 101, 100.) This would mean that Smith knew that any claims of sexual assault could derive only from the Cornerstone facilitators.[6] The accusations of sexual assault reported by Smith, when Plantan alleges that she knew that S.P. had not made them, would establish malice.

As to the second factor to establish malicious prosecution, the Court determines whether the prosecution was "instituted by or with the cooperation of [Smith]." *See Bennett*, 492 Fed. App'x. at 316. Smith argues that Plantan's Complaint only alleges that the Cornerstone facilitators reported the allegations of sexual abuse to law enforcement. (ECF No. 34, at 4.) While Smith is correct that Plantan only names the Cornerstone facilitators as the abuse reporters in the Factual Background and Malicious Prosecution sections of his Complaint, Plantan does allege that Smith herself reported the allegations in other sections. (*See* ECF No. 1 ¶115

---

[6] In the Hanover County Circuit Court record, there are instances where Plantan made statements indicating that he believed S.P. speaks through facilitated communication. (ECF No. 24-5, at 6–7.) The Court is not considering the Hanover County Circuit Court record, but if it *were* to consider these statements, they would not change the Court's reading of Plantan's complaint in the light most favorable to him. Plantan's understanding of facilitated communication at the time of his arrest in 2019 does not necessarily reflect his understanding at the time of the filing of his complaint in 2022.

("Defendant Smith reported these unsubstantiated claims by S.P. to law enforcement"); *see also* ECF No. 1 ¶¶ 116–117, 120, 122, 126, 147–148, 155–157.) While "a witness who provides the police with incorrect information during a criminal investigation [does not] ipso facto 'institute[]' or 'procure[]' the prosecution if he provides that information unequivocally[,] . . . the critical question is whether the witness provided the police with his honest or good faith belief of the facts." *Brice*, 220 F.3d at 238 (citing *King*, 142 S.E. at 361). Because Plantan asserts that Smith acted maliciously, or untruthfully, in her reporting, she is not protected from civil liability for acting as a witness. *See id.*; *King*, 142 S.E. 358 at 361 (distinguishing between the actions of a witness who acted in good faith and was thus shielded from civil liability, from those of a witness reporting with questionable truthfulness)).

As to the third factor to establish malicious prosecution, Plantan's plausible allegations that Smith acted with malice preclude a finding that she had probable cause to institute the prosecution against Plantan. Read favorably, Plantan states a claim that Smith knew that S.P. did not make any claims of sexual abuse against Plantan, meaning that she would not have any "facts and circumstances to raise the belief in a reasonable mind . . .that [Plantan was] guilty of [sexually abusing S.P.]" *See Bennett*, 492 Fed. App'x. at 324 (quoting *Andrews v. Ring*, 585 S.E.2d 780, 786 (Va. 2003)

As to the final and fourth factor, Smith does not challenge that the Hanover County Circuit Court terminated the criminal prosecution in Plantan's favor. *See Bennett*, 492 Fed. App'x. at 316.

In sum, at this procedural posture, Plantan bears his burden to state in the Complaint each of the factors required to establish a malicious prosecution claim. The Court will deny the

15

Motion for Judgment on the Pleadings as to the Malicious Prosecution Count against Smith (Count III.D).

### B. Plantan Concedes His False Arrest Claim Against Smith Should be Dismissed

Next, Plantan brings a Virginia false arrest claim against Smith (Count IV.D).  Plantan concedes that the Court should rule in Smith's favor as to this count.  (ECF No. 35, at 1.) Therefore, the Court will grant the Motion for Judgment on the Pleadings as to Count IV.D.

### C. Plantan States a Claim for Intentional Infliction of Emotional Distress Against Smith

Next, Plantan brings a Virginia intentional infliction of emotional distress ("IIED") claim against Smith (Count V).  Based on the favorable reading afforded to Plantan's Complaint on a motion for judgment on the pleadings, Plantan sufficiently alleges outrageous and intolerable conduct by Smith.  Thus, the Court will deny the Motion for Judgment on the Pleadings as to the IIED Count against Smith (Count V).

### 1. Legal Standard:  Intentional Infliction of Emotional Distress

To state a claim for IIED under Virginia law, a plaintiff must plausibly allege:  (1) "the wrongdoer's conduct was intentional or reckless"; (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"; (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress"; and, (4) "the emotional distress was severe." *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974).  Because of the "risks inherent in torts where injury to the mind or emotions is claimed," Virginia law does not favor IIED claims. *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (citation omitted).  However, Virginia law does not completely bar IIED claims. *Daniczek*, 156 F. Supp. 3d at 758.

16

The second element's requirement that the conduct be "outrageous" is a question of law, but "[w]here reasonable [minds] may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Womack*, 210 S.E.2d at 148 (citation omitted).

The fourth element requires that the distress rise to a level "that no reasonable person could be expected to endure." *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991). "[E]mbarrassment, disappointment, or hurt feelings" alone cannot prove emotional stress severe enough to sustain an IIED claim. *See Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 436 (4th Cir. 2006).

For some time, Virginia federal courts have discussed whether Virginia's heightened pleading standards for IIED claims apply when a federal court evaluates an IIED claim under supplemental jurisdiction. *See Daniczek*, 156 F. Supp. 3d at 758–59. Courts have concluded that federal pleading standards prevail: "[T]he Fourth Circuit requires federal courts applying Virginia [IIED] law to apply laxer standards of pleading than Virginia requires in its own state courts." *See id.* at 758. As such, "*Twombly* and *Iqbal* demand specificity (rather than conclusory allegations), without altering the type of harm the plaintiff must allege." *Id.* at 759.

### 2.      Plantan Sufficiently Pleads Outrageous and Intolerable Conduct

Read favorably, Plantan is able to maintain his IIED Count (Count V) against Smith because Plantan has sufficiently alleged all of the elements of a Virginia state IIED claim in his Complaint.

Although in her Motion for Judgment on the Pleadings Smith summarily contends that Plantan "has failed to plead any facts to prove any of the elements of a cause of action for [IIED]," (ECF No. 34, at 8), her arguments speak only to the second factor of a Virginia IIED

claim: that Plantan fails to allege that Smith's "conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Womack*, 210 S.E.2d at 148. Because it is the only factor Smith specifically addresses, the Court will analyze the second factor first.

Plantan pleads that Smith's "reporting and promotion of the criminal charges against . . . Plantan based on [facilitated communication] . . . was outrageous and intolerable." (ECF No. 1 ¶ 116.) As previously discussed, reading Plantan's Complaint favorably, Plantan alleges that Smith knew the claims of sexual assault did not come from S.P. and maliciously reported them to law enforcement anyway. (ECF No. 1 ¶¶ 101, 100.)

"Filing false police reports has been deemed outrageous and intolerable under Virginia law; in fact, Virginia has criminalized the conduct." *Khoraki v. Longoria*, No. 3:22cv70, 2022 WL 1528160, at *4–5 (E.D. Va. May 13, 2022) (citing Va. Code § 18.2-461) (denying a motion to dismiss an IIED claim when the plaintiff alleged that the defendant, an individual plaintiff dated, made false accusations of stalking and assault to the police that resulted in the plaintiff's arrest and detention without bond); *compare to Davis v. Wal-Mart Stores East, L.P.*, 177 F. Supp. 3d 943, 952 (E.D. Va. 2016) (granting a motion to dismiss an IIED claim when the facts alleged by the plaintiff did not support a showing that the defendant accuser knowingly made false accusations to the police, and the defendant's "simple errors in judgment" that led to the plaintiff's arrest and detention did not reach the "requisite level of outrageousness or intolerability"), *aff'd in relevant part*, 687 F. App'x 307 (4th Cir. 2017). Because Plantan's claims, read in the light most favorable to him, allege that Smith knew the claims of sexual assault did not come from S.P. and maliciously reported them to law enforcement anyway, the Court finds that Smith's alleged conduct does meet Virginia's definition of outrageous conduct.

18

Smith does not make any arguments regarding Plantan's failure to sufficiently plead the remining factors of a Virginia IIED claim, but the Court will nonetheless analyze each factor. As to the first factor, *see Womack*, 210 S.E.2d at 148, Plantan specifically pleads that Smith "intentional[ly] or reckless[ly] report[ed] [the allegations of sexual abuse against Plantan] as a means of manipulating the judicial process concerning custody and visitation and resulted in . . . Plantan's deprivation of liberty for approximately ten months in pretrial detention." (ECF No. 1 ¶ 117.)  Plantan also pleads that Smith used "facilitated communication [with] S.P. and . . . report[ed] . . .the purported claims from S.P. against . . . Plantan . . . to intentionally injure" him. (ECF No. 1 ¶ 122).  Thus, the first factor is met.

As to the third factor, Plantan has pled that his severe emotional distress is both causally and directly connected to the false allegations Smith reported to the police. *See Womack*, 210 S.E.2d at 148.  Plantan states that the reporting of the false allegations of sexual abuse resulted in Plantan's arrest, detention, prosecution, and loss of parental and visitation rights with S.P., which Plantan describes as the cause of his emotional distress.  (ECF No. 1 ¶¶ 117, 119–121.) Causation is therefore sufficiently alleged.

As to the fourth factor, Plantan specifically alleges that he is "suffering from severe emotional distress" due to Smith's conduct, which led to his arrest, detention, prosecution, and loss of visitation and parental rights with S.P.  (ECF No. 1 ¶¶ 120–121.)  Plantan states that his emotional distress "include[s] but [is] not limited to[,] severe anxiety, paranoia, depression, embarrassment, and psychological trauma."  (ECF No. 1 ¶¶ 120–121.)  These pleadings, at this stage, are sufficient to satisfy the fourth factor of a Virginia IIED claim in federal court.  *See Daniczek*, 156 F. Supp. 3d at 758 ("[T]he Fourth Circuit requires federal courts applying Virginia [IIED] law to apply laxer standards of pleading than Virginia requires in its own state

courts"); *see also Khoraki*, 2022 WL 1528160, at \*5 (finding that the plaintiff's pleadings that he "requires therapy and suffers from nightmares, flashbacks, extreme stress and fear" satisfied the fourth factor).

Because Plantan pleads a legally sufficient claim of IIED in Virginia, the Court will deny the Motion for Judgment on the Pleadings as to Count V.

**D.**     **Plantan Fails to State a Claim for Abuse of Process Against Smith**

Finally, Plantan brings a Virginia state law Abuse of Process claim against Smith (Count VI). The allegations in the Complaint do not sustain Plantan's Abuse of Process Count against Smith because Plantan does not specify a particular legal process that Smith abused. Thus, the Court will grant the Motion for Judgment on the Pleadings as to the Abuse of Process Count against Smith (Count VI).

**1.**     **Legal Standard:  Abuse of Process**

To state a claim for abuse of process under Virginia law, a plaintiff must sufficiently allege: "(1) the existence of an ulterior purpose; and (2) an act in the use of the process not proper in the regular prosecution of the proceedings." *Daniczek*, 156 F. Supp. 3d at 757 (quoting *Donohoe Constr. Co., Inc. v. Mount Vernon Assocs.*, 369 S.E.2d 857, 862 (Va. 1988)).

Importantly, the second element of an abuse of process claim "requires an act other than initiation of process that sets the coercive power of the judiciary into play against a person." *Id.* (citing *Donohoe Constr.*, 369 S.E.2d at 862); *see also Triangle Auto Auction, Inc. v. Cash*, 380 S.E.2d 649, 650 (Va. 1989) ("[a]buse of process involves the wrongful *use* of process *after* it has been issued."). "The term 'process' in this context means specific legal procedures enforced by judicial authority. . . '[T]he filing of a lawsuit qualifies as a regular use of process and cannot constitute abuse of process, even if the filing was influenced by an ulterior motive.'" *Eubank v.*

*Thomas*, 861 S.E.2d 397, 403 (Va. 2021) (quoting *Advanced Constr. Corp. v. Pilecki*, 901 A.2d 189, 197 (Me. 2006). "Instead, abuse of process claims arise when litigants misuse individual legal procedures, such as discovery, subpoenas, and attachment, after a lawsuit has been filed." *Id.* (internal quotation mark omitted).

### 2. Plantan Fails to Sufficiently Plead a Legal Process that Was Abused by Smith

Plantan fails to maintain his Abuse of Process Count (Count VI) against Smith because Plantan does not point to any particular legal process that Smith abused.

While Virginia courts have "described malicious prosecution and abuse of process as 'kindred' causes of action," the elements differ because "unlike the tort of malicious prosecution, an action for abuse of process usually presupposes that the . . . process was proper in its inception." *Eubank*, 861 S.E.2d at 403 (citations omitted) (alteration in original). Plantan's Abuse of Process Count against Smith mirrors his Malicious Prosecution Count by alleging that Smith's "use and reliance on facilitated communication as a means of *advancing* the[] allegations against . . . Plantan in the criminal and social services' investigations was improper." (ECF No. 1 ¶ 126 (emphasis added).) These allegations only speak to the impropriety of the *initiation* of the process against Plantan, which fails to meet the requirements of the second element of an abuse of process claim. *Daniczek*, 156 F. Supp. 3d at 757 (the second element of an abuse of process claim "requires an act other than initiation of process that sets the coercive power of the judiciary into play against a person.").

Plantan does allege that *after* process was initiated against him, Smith, through her attorney, improperly "'offered' . . . Plantan's attorney a compromise in [Plantan's] criminal proceedings by suggesting that . . . Smith would drop the charges, or request for the criminal charges at issue to be dismissed, should . . . Plantan agree to never see S.P. again." (ECF No. 1

21

¶ 64.)  However, Plantan does not identify any particular legal process that Smith abused when making this offer.  *See Eubank*, 861 S.E.2d at 403 (finding that the plaintiffs' abuse of process claim failed as a matter of law because while plaintiffs alleged that the defendants provided known false evidence and withheld adverse evidence, the plaintiffs did not point to any particular legal process that the defendants abused).  While Smith's "offer" may evince impropriety or the existence of an ulterior purpose for initiating the criminal proceedings, Plantan's allegations regarding the "offer" do not mention the use of any "legal procedures [that are enforced by judicial authority], such as discovery, subpoenas, and attachment" that take place after the initiation of process.  *Eubank*, 861 S.E.2d at 403 (citation omitted).

Because Plantan fails to plead the second required element for a Virginia abuse of process claim, the Court will grant the Motion for Judgment on the Pleadings as to Count VI.

### IV.  Conclusion

For the foregoing reasons, the Court will grant Smith's Motion for Judgment on the Pleadings in part.  The Court will dismiss the False Arrest Count (Count IV.D) with prejudice and the Abuse of Process Count (Count VI) without prejudice.  However, the Court will deny Smith's Motion for Judgment on the Pleadings as to the Malicious Prosecution Count (Count III.D) and the IIED Count (Count V).

Date:  5-10-2023
Richmond, Virginia

_____
                                              /s/
M. Hannah Lauck
United States District Judge